In the Matter of EDWARD M. COOPERMAN (Admitted as ED-
WARD MICHAEL COOPERMAN), an Attorney, Respondent.
GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT,
Petitioner.

Second Department, January 25, 1993

## APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Westbury *(Robert P. Guido* of counsel), for petitioner.

*Nicholas J. Damadeo,* Hicksville, for respondent.

### OPINION OF THE COURT

Per Curiam.

This proceeding presents the issue of the validity of "nonrefundable fee" and "minimum fee" retainer agreements. Although such agreements have traditionally been subject to great criticism, their legality has never been directly addressed by this Court. We now address this question, and in doing so, we find a distinction between "nonrefundable fee" agreements and "minimum fee" agreements. "Nonrefundable fee" agreements, by definition, allow an attorney to keep an advance payment irrespective of whether the services contemplated are rendered. By contrast, a "minimum fee" agreement is a forecast by the attorney of the minimum amount that a client can expect to pay in order for the attorney to represent the client to completion in the contemplated matter. If the attorney is discharged prior to completion, but after entering into a "minimum fee" agreement, he or she is entitled to payment in quantum meruit. We now hold that the use of a "nonrefundable fee" retainer is unethical and it is violative of an attorney's obligations under the Code of Professional Responsibility to refund unearned fees upon his or her discharge.

We are aware of the ethics opinions which attempt to define "minimum fee" agreements as a subspecies of "nonrefundable fee" agreements *(see, e.g.,* 1989 Opns NY St Bar Assn No. 599). To the extent that those opinions blur the valid distinction between a "nonrefundable fee" and a "minimum fee", we decline to follow them. The notion of a so-called "minimum fee" as a forecast of the lowest amount that a lawyer will charge, based on the factors enumerated in Code of Professional Responsibility DR 2-106 (B) (1)-(8), as the fee for carrying a contemplated legal task through to completion, is a useful one. It enables a client to know, in advance, the minimum amount he or she can expect to pay to attempt to achieve the desired result through the use of the lawyer's services, and enables the client to compare the fees of other lawyers for the same services.

In this proceeding, the respondent is charged with 15 allegations of professional misconduct. The Special Referee sus-

tained all 15 charges. The petitioner moves to confirm the report of the Special Referee, and to compel the respondent to make restitution in an amount this Court may deem just and proper. The respondent submits an affirmation in opposition to the petitioner's motion. We agree with the report of the Special Referee to the extent that we find respondent guilty of 12 of the 15 charges of misconduct. We do not find respondent guilty of Charges One, Six, or Eleven.

The charges of professional misconduct are a result of the respondent's use of three nonrefundable fee retainer agreements.

Charges Two through Five refer to a fee agreement, the relevant portions of which are set out below: "My minimum fee for appearing for you in this matter is fifteen thousand ($15,000) dollars. This fee is not refundable for any reason whatsoever once I file a notice of appearance on your behalf".

Charges Seven through Ten refer to a fee agreement which provides, in pertinent part:

"For the MINIMUM FEE and NON-REFUNDABLE amount of Five Thousand ($5,000) Dollars, I will act as your counsel * * *

"This is the minimum fee no matter how much or how little work I do in this investigatory stage * * * and will remain the minimum fee and not refundable even if you decide prior to my completion of the investigation that you wish to discontinue the use of my services for any reason whatsoever * * *

"[i]f you so decide, following my rendering this opinion to you that such is feasible and/or advisable, then in that event, my retainer will be Fifteen Thousand ($15,000) Dollars to commence any such proceeding or to file any papers to accomplish this result. The latter amount will be less the Five Thousand ($5,000) Dollars previously paid on account of legal services. The Fifteen Thousand ($15,000) is my MINIMUM FEE for this matter, and is NOT REFUNDABLE under any circumstances, even if you decide to terminate my services or to discontinue the case for any reason whatsoever".

Charges 12 through 15 refer to another fee agreement, the relevant portions of which are set out below:

"The MINIMUM FEE for Mr. Cooperman's representation * * * to *any* extent whatsoever is Ten Thousand ($10,000) dollars. This fee will be paid Five Thousand ($5,000) dollars today and Five Thousand ($5,000) on or before December 1, 1988.

"The above amount is the minimum fee and will remain the

minimum fee no matter how few court appearances are made by Mr. Cooperman. This fee will also cover, if required, whatever court appearances are required to complete this matter *without* a trial or any hearings that involve the taking of testimony, following indictment. The minimum fee will remain the same even if Mr. Cooperman is discharged" (emphasis in original).

The charges allege that the language in the respective fee agreements violates the respondent's obligation to refund promptly any part of a fee paid in advance that has not been earned *(see,* DR 2-110 [A] [3]), and creates an impermissible chilling effect upon the client's inherent right, upon public policy grounds, to discharge an attorney at any time with or without cause. The charges also allege that in each of the cases, the respondent charged a clearly excessive fee and then wrongfully refused to refund any portion of the fee.

In considering these charges, we are presented with the opportunity to answer a question left open by the Court of Appeals when it decided *Jacobson v Sassower* (66 NY2d 991). In *Jacobson,* the Court of Appeals found that the Sassower nonrefundable retainer agreement was ambiguous and thus, upon discharge, the attorney was to be compensated on an hourly basis, rather than keep the retainer. In view of the finding of ambiguity, the Court deemed it unnecessary to reach the question of whether nonrefundable retainer agreements are against public policy and therefore void. We now answer this question in the affirmative. Since an attorney's fee is never truly nonrefundable until it is earned, the use of this term, which by definition allows an attorney to keep an advance payment irrespective of whether the services contemplated are rendered, is misleading, interferes with a client's right to discharge an attorney, and attempts to limit an attorney's duty to refund promptly, upon discharge, all those fees not yet earned.

The respondent's use of a nonrefundable retainer agreement precisely illustrates the abuse inherent in such retainers. The words "nonrefundable fee" are imbued with an absoluteness which conflicts with DR 2-110 (A) (3), which provides that a lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned. We find the use of these retainer agreements to be unethical and unconscionable in spite of the inherent right of attorneys to enter into contracts for their services *(see generally, Greenberg v Remick & Co.,* 230 NY 70).

The contract under which an attorney is employed by a client has peculiar and distinctive features which differentiate it from ordinary contracts of employment. It is a firmly established rule that as far as the attorney is concerned, the contract is entire and the attorney cannot recover under the contract unless he or she completely performs. The client, with or without cause, may terminate the contract at any time (*Martin v Camp*, 219 NY 170, *order amended* 220 NY 653). We find that any attempt by the attorney to hinder that right contravenes the Code of Professional Responsibility by which all attorneys are bound. We also find that the respondent has attempted to hinder that right in drafting his retainer agreements to require "nonrefundable fee" payments.

We find that it is unconscionable that the respondent could claim that he earned $15,000 by filing a notice of appearance on a client's behalf, which is the sum and substance of the fee agreement which is the subject of Charges Two through Five. The fee agreement which is the subject of Charges Seven through Ten, which mandates that the client pay the respondent a nonrefundable fee of $5,000 to act as counsel and conduct an investigation, is unreasonable, in that it attempts to make the client liable for this sum even if the respondent is discharged within hours of signing the agreement. The second portion of that agreement, which charges $15,000, crediting the prior $5,000, to commence a proceeding or file any necessary papers, offers no protection for the client should the client wish to terminate the respondent's services.

The agreement which is the subject of Charges 12 through 15 is equally objectionable in that it charges $10,000 for "any" representation, thereby all but foreclosing the ability to discharge the respondent, since to do so, according to the agreement, would mean forfeiting the $10,000. We find the respondent's use of the words "to *any* extent whatsoever" in lieu of "nonrefundable fee" to be an attempt to circumvent the objectionable language and yet obtain the same result. In short, we find that fee agreement to be a thinly disguised "nonrefundable fee" retainer agreement.

In spite of the respondent's contention that he has drafted his retainer agreements to avoid any ambiguity, thereby comporting with the decision of the Court of Appeals in *Jacobson v Sassower (supra),* we find that the agreements are no more than an attempt to prevent discharge of the attorney by the client and to circumvent the disciplinary rules requiring an attorney to promptly refund, upon discharge by a

client, all funds not yet earned (see, Code of Professional Responsibility DR 2-110 [B] [4]; [A] [3]). By his own admission contained in his affidavit in opposition, the respondent used his retainer agreements to prevent his clients from exercising their right to discharge him. According to the respondent, the use of the retainer agreement prevents the client from being able to "always fire an attorney" "if something did not go immediately to the client's liking". This right which the respondent attempts to prevent is fundamental to the lawyer-client relationship, and it follows that a client should not be penalized for exercising that right.

While the respondent does not concede that the language of the retainer agreements is illegal or unethical, he does concede that a "nonrefundable fee" retainer agreement prevents the client from *always* being able to fire the lawyer and receive a refund and that his retainer agreements attempt to prohibit a client from obtaining a return of "unused" (unearned) fees and from freely discharging counsel. As such, the agreements contravene decisional authority (see generally, *Martin v Camp*), and the provisions of the Code of Professional Responsibility (see, Code of Professional Responsibility DR 2-110 [B] [4]; [A] [3]; EC 2-32). We, therefore, sustain Charges Two, Three, Seven, Eight, Twelve, and Thirteen.

The remaining six charges involve excessive fees (Charges Five, Ten, Fifteen), and failure to refund unearned portions of the fee (Charges Four, Nine, Fourteen). The respondent concedes that in none of the subject cases does his fee reflect a quantum meruit calculation according to his hourly rates, but argues that in all of the cases he "did what he was permitted to do" and contends that the factors enunciated in Code of Professional Responsibility, DR 2-106 (B) (1)-(8) must be taken into account when considering his fee. While we agree that these factors must be considered, we still find upon the evidence adduced at the hearing that the respondent's fees were excessive and that he wrongfully refused to refund the unearned portion of his fees. We sustain Charges Four, Five, Nine, Ten, Fourteen, and Fifteen.

In determining the appropriate measure of discipline we have considered the following facts. On September 18, 1985, the Grievance Committee issued the respondent a Letter of Caution, cautioning him "not to accept non-refundable retainers".

Approximately one year after receipt of this Letter of

Caution, the respondent entered into the "nonrefundable fee" retainer agreement which is the subject of Charges Two through Five. After entering into this agreement, but prior to entering into the other two agreements, the respondent was issued another Letter of Caution on June 19, 1987, for failure to return funds to his client based on a nonrefundable retainer agreement. Thereafter, despite two Letters of Caution, the respondent entered into the "nonrefundable fee" retainer agreements, which were the subject of Charges Seven through Ten and Twelve through Fifteen.

It is undisputed that the respondent was aware of the available ethics opinions detailing the possible conflicts between the use of "nonrefundable fee" retainer agreements and the Code of Professional Responsibility when he entered into the agreements at issue here. In spite of this, the respondent drafted his retainer agreements to circumvent his obligation to refund any part of a fee paid in advance that was unearned, to interfere with his client's right of discharge, and to extract and retain excessive fees. For his conduct, it is the decision of this Court that the respondent be suspended from the practice of law for two years.

At this time, we decline to order restitution, since that issue is more properly decided in a civil proceeding at the trial level.

MANGANO, P. J., THOMPSON, BRACKEN, SULLIVAN and O'BRIEN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted with respect to Charges Two, Three, Four, Five, Seven, Eight, Nine, Ten, Twelve, Thirteen, Fourteen, and Fifteen, and is otherwise denied; and it is further,

Ordered that the respondent, Edward M. Cooperman, admitted to practice under the name Edward Michael Cooperman, is suspended from the practice of law for a period of two years, commencing February 25, 1993, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement after the expiration of the two-year period upon furnishing satisfactory proof that (a) during that period he has actually refrained from practicing or attempting to practice as an attorney and counselor-at-law, (b) he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10), and (c) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent Edward M. Cooperman, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application, or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.