**In re GRAY'S RUN TECHNOLOGIES, INC., Riverside Energy, Inc., Old River Road Bakery, Debtors–In–Possession.**

Bankruptcy Nos. 5–96–02395, 5–96–02400, 5–96–02420.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Nov. 19, 1997.

John H. Doran, Doran & Nowalis, Wilkes–Barre, PA, for Debtors–In–Possession.

Gregory Lyons, Office of U.S. Trustee, Harrisburg, PA.

### OPINION

JOHN J. THOMAS, Bankruptcy Judge.

This opinion is issued in support of Order dated November 12, 1997.

The United States Trustee has objected to the Chapter Eleven Debtors' Applications for Appointment of Counsel in all three of the above-captioned matters. In all three cases, the Debtors–in–Possession are represented by the same law firm, Doran & Nowalis. In these cases, the pre-petition retention agreement reads similar. For purposes of illustra-

tion and discussion, the retention agreement in Riverside Energy, Inc. is herein set forth.

November 8, 1996

Riverside Energy, Inc.

124 Monahan Avenue

Dunmore PA 18512–0166

Dear Jim:

This letter will confirm that we would be pleased to undertake the legal representation of Riverside Energy, Inc. With respect to a chapter 11 bankruptcy proceeding.

The scope of our representation will be to prepare the petition in bankruptcy, the bankruptcy schedules, the statement of financial affairs, the chapter 11 plan and to generally represent Riverside Energy, Inc. during the course of the chapter 11 proceeding.

The fee for our services will be based upon those factors set forth in Rule 1.5 of the Pennsylvania Rules of Professional Conduct. A copy of that rule is attached. A primary component of our fee will be our current hourly rate for legal services. The current hourly rates for lawyers in this firm are as follows: John H. Doran, $195.00; Robert C. Nowalis, $165.00; Lisa M. Doran, $110.00; and Brian M.[sic] Manning, $135.00. These current hourly rates are subject to periodic adjustment to reflect economic and other considerations.

We will require an advance fee retainer of $23,000.00 and $2,000.00 costs on this matter. A bill for this retainer and costs is enclosed. The advance fee retainer is our payment in advance for contemplated legal services. Ownership of the retainer passes to this firm at the time the advance fee retainer is paid. The retainer will not be maintained in our client escrow account. We will keep a record of all time devoted to this representation. Depending upon the progress of the chapter 11 proceeding, we may apply to the bankruptcy court for additional compensation once the value of the legal services rendered exhausts the amount of the advance fee retainer you have paid. Prior to the exhaustion of the retainer, we will not seek prior approval of our compensation from the retainer except as disclosed in the application for Bank-

ruptcy Court authority to retain this firm. The total compensation allowed this firm is subject to review of the Bankruptcy Court.

If the foregoing terms are acceptable, please so indicate by signing and dating a copy of this letter and returning the same to me along with our retainer. We will commence our representation upon receipt of our retainer and the return of a copy of this engagement letter counter-signed by James E.Crass, IV.

Very truly yours,

/s/ John H. Doran

John H. Doran

JHD/md

Enclosures

Riverside Energy, Inc.

November 9[sic], 1996

Page 2

Riverside Energy, Inc. hereby agrees to retain the law firm of Doran & Nowalis pursuant to the terms and conditions set forth above.

RIVERSIDE ENERGY, INC.

BY: /s/ James E. Crass[2]

JAMES E. CRASS, IV., PRESIDENT

DATED: Nov. 11, 1996

The United States Trustee objects to the agreement because it provides for an automatic draw-down of the retainer as time is expended on the case without any prior approval of the Court. Whether the United States Trustee objects to the appointment or not, the employment of professionals is of special concern to the Court. 11 U.S.C. §§ 327–330. A review of that employment must necessarily begin with the retention agreement.

■ Initially, this Court acknowledges that the creation of the attorney-client relationship is basically contractual. 7 Am. Jur.2d *Attorneys at Law* § 245 (1980). "The essentials of an express fee contract for legal services are the same as for any other contract of employment and are governed by the ordinary rules of contract law. Hence, ordinarily, construction of a contract for compen-

sation of an attorney is governed by the same rules that apply to contracts generally." 7 Am.Jur.2d *Attorneys at Law* § 247 (1980).

■ Notwithstanding that observation, "a contract for legal services is governed by more strict rules than those applicable to a contract between parties on equal footing." 7 Am.Jur.2d *Attorneys at Law* § 121 (1980).

■ "All transactions between an attorney and his client are closely scrutinized by the courts, and the measure of good faith which an attorney must exercise in such transactions is much higher than is required in business dealings where the parties trade at arm's length." 7 Am.Jur.2d *Attorneys at Law* § 121 (1980).

It may seem somewhat hypocritical to say, on one hand, that the ordinary rules of contract law apply to the retention contract, while asserting, on the other hand, that these transactions are closely scrutinized. Perhaps some courts consider that there exists a "bright line" that differentiates the relationship of client to counsel before the retention agreement is executed and that relationship afterwards. Even if such a distinction has justification, it considerably diminishes if the retention agreement in question deals with the employment of bankruptcy counsel for the debtor in possession. *In re NBI, Inc.,* 129 B.R. 212 (Bankr.D.Colo.1991) ("Freedom of contract is necessarily limited in the bankruptcy context.") After all, the debtor-in possession is a fiduciary for all creditors. *Wolf v. Weinstein,* 372 U.S. 633, 651, 83 S.Ct. 969, 980, 10 L.Ed.2d 33 (1963). The attorney-client retention agreement is traditionally scrutinized for evidence of overreaching[1]. Furthermore, 11 U.S.C. § 329 invites the court's studied review of the contract.

■ Moreover, the bankruptcy court has the inherent power under 11 U.S.C. § 105(a) to enforce the provisions of §§ 327–331 and regulate the conduct of its officers. *In re Johnson,* 921 F.2d 585, 586 (5th Cir.

1991), *In re Eric Alden Lewis,* 113 F.3d 1040, 1045 (9th Cir.1997), *See also, Bergstrom v. Dalkon Shield Claimant's Trust (In re A.H. Robins Co.),* 86 F.3d 364, 373 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996). While acknowledging that § 105(a) has its limitations, it is of the utmost importance that this Court act to preserve the integrity of the bankruptcy system and to maintain public confidence therein. *In re EZ Feed Cube Company, Ltd.,* 123 B.R. 69 (Bankr.D.Or.1991). Nevertheless, because inherent powers are shielded from direct democratic controls, they should be exercised with restraint and discretion. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).

■ A retainer is the act of a client in employing counsel. It also denotes the fee which the client pays when an attorney is retained to act for that client thus preventing the lawyer from acting for an adversary.

The retention of an attorney "... merely gives a right to expect professional service when requested, but none which is not requested. It binds the person retained not to take a fee from another against his retainer, but to do nothing except what he is asked to do, and for he is to be distinctly paid."

Black's Law Dictionary (4th ed. rev'd 1968).

■ Two types of retainer agreements are prevalent. *See, generally,* Lester Brickman and Lawrence A. Cunningham, *Nonrefundable Retainers Revisited,* 72 N.C.L.Rev. 1, 5–6 (1993). The general retainer occurs where the services being purchased are the attorney's "availability" to render a service if and as needed in a specified time frame.[2] Otherwise, a special retainer is indicated where the funds paid are for a specific service.

---

1. "Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." S.Rep. No. 95–989, *supra,* at 39, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 5825;

H.R.Rep. 95–595, *supra,* at 329, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 6285.

2. A general retainer is, sometimes, called an engagement fee. *In re Printing Dimensions, Inc.,* 153 B.R. 715, 719, 721 (Bankr.D.Md.1993).

■ The general retainer or "availability fee" is also referred to as a "classic retainer." *In re McDonald Brothers Construction, Inc.,* 114 B.R. 989, 997 (Bankr.N.D.Ill.1990). Such a retainer has been described as a "sum of money paid by a client to secure an attorney's availability over a given period of time." *Baranowski v. State Bar,* 24 Cal.3d 153, 164 n. 4, 593 P.2d 613, 618 n. 4, 154 Cal.Rptr. 752, 757 n. 4 (1979). This type of retainer binds a lawyer to represent a particular client while foreclosing that attorney from appearing on behalf of an adverse party. *In re Mondie Forge Co.,* 154 B.R. 232 (Bankr.N.D.Ohio 1993), *In re National Magazine Pub. Co.,* 170 B.R. 329, 330 (Bankr. N.D.Ohio 1994), 1995 WL 902545 (Pa.Bar. Assn.Comm.Leg.Eth.Prof.Resp.) (1995). The availability fee is generally considered "earned upon receipt" or "non-refundable." *In re McDonald Brothers Construction, Inc.,* 114 B.R. 989, 998 (Bankr.N.D.Ill.1990). Since the availability fee is considered full payment for contemporary services, i.e., the promise of counsel that he or she will be there when needed, there has been little dispute that this fee can be deposited in the lawyer's operating account. "All jurisdictions agree that a general retainer is earned when paid by the client and therefore that sum must be deposited to the lawyer's general account." Lester Brickman, *The Advance Fee Payment Dilemma: Should Payments be Deposited to the Client Trust Account or to the General Office Account?,* 10 Cardozo L.Rev. 647, 649 n. 20 (1989). *See also In re Doors & More, Inc.,* 127 B.R. 1001, 1003 (Bankr.E.D.Mich.1991) ("A nonrefundable retainer paid to a lawyer is the lawyer's property and may not be deposited in a client trust account." (*quoting* the State Bar of Mich. Standing Comm. on Professional and Judicial Ethics, informal opinion RI–69 (February 14, 1991))). In a bankruptcy context, therefore, an availability fee becomes the property of the lawyer upon receipt and is not part of the debtor's estate since neither the beneficial nor the legal interest in that fund remains with the debtor. 11 U.S.C. § 541(a)(1).

■ This type of retainer stands in stark contrast to the special retainer that secures payment for future services. Special retainers are typically categorized as a security retainer or an advance fee retainer. *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 459 (Bankr.M.D.Pa.1996). "Advance fee retainers differ from security retainers in that ownership of the funds is intended to pass to the attorney at the time of the payment." *Id., citing In re Renfrew Center of Florida, Inc.,* 195 B.R. 335, 338 (Bankr.E.D.Pa.1996).

While ownership also changes hands when general retainers are transferred to counsel, the advance fee retainer presupposes that the client will have an entitlement to some determinate number of hours of legal time.

■ I do not view ownership of the retainer as being of significant import in a bankruptcy context. Neither should this decision turn on whether the retainer qualifies as property of the estate under 11 U.S.C. § 541. 11 U.S.C. § 329(b) specifically authorizes the court to review and adjust a prepetition retainer regardless of how the retainer is titled and without reference to the source of payment. *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 571 (Bankr.N.D.Tex.1986), ("[A]ny agreement concerning compensation executed may be canceled by the Court."). I recognize those cases that have focused on the ownership of the retainer or the qualification of the retainer as estate property, and which have, therefore, studied state law precepts to render their decisions. *See, for example, In re McDonald Bros. Constr., Inc.,* 114 B.R. 989 (Bankr.N.D.Ill.1990). This approach, however, minimizes the unambiguous intention of Congress, manifested in 11 U.S.C. § 329(b), to entrust jurisdiction of this matter into the hands of the bankruptcy judge, and not to the vicissitudes of various state court determinations of property interest. *In Re Engel,* 124 F.3d 567, 572 (3rd Cir.1997), ("[11 U.S.C. § 329] empowers the court to review any compensation arrangement between a debtor and an attorney .").

■ When an application to appoint counsel under 11 U.S.C. § 327 is presented to this Court, I have the obligation to review the terms of retention and to veto those retention agreements that may interfere with the exercise of § 329 powers. This Court

acknowledges that property interests are, typically, determined under state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). While the ownership of the retainer may be decided under such law, the determination of the ownership of the retainer does not impede the ability of this Court to order the return of the retainer to its source. This is especially true, where, as here, Congress has articulately made its intentions known and this Court can "give effect" to such intention without disregarding state law. *In re Roach,* 824 F.2d 1370, 1374 (3rd Cir.1987). Application of state law retainer principles, including those dealing with ownership of the retainer, should not be controlling and, thus, be allowed to reduce the ability of the federal bankruptcy courts to exercise their statutory role. Moreover, § 329 would have little impact if counsel were free to dispose of the prepetition retainer at its whim and thereafter arguably raise the hardship entailed in securing replacement funds.

I also view an early determination of the propriety of the retention deposit as a caveat to counsel for the debtor in possession that the award of bankruptcy fees is specifically dependent on an "after-the-fact" measurement of the benefit that counsel generated to the debtor's estate. See Judge Becker's concurring opinion in *In Re Engel,* 124 F.3d 567, 581 (3rd Cir.1997).

However it be described, the special retention agreement operates on the fundamental mechanism that a fund is transferred to a lawyer toward payment of future services.

■ As indicated earlier, agreements between attorney and client are generally controlled by the law of contracts. As such, "[a]n express contract specifying a stated compensation for a lawyer's service is generally conclusive as to the amount of compensation, subject to review by the courts, unless made under a mistake of fact." Samuel Williston, A *Treatise on the Law of Contracts,* 10:925 § 1285A. Counsel and client can agree that a fund transferred to the lawyer represents a prepayment for future legal services, or they can agree that such payment represents *security* for services to be rendered in the future.

■ In these cases, counsel has identified the specific retainer at issue as an "advance fee" type of retainer. Neither the United States Trustee nor the Court challenges that description. Doran & Nowalis have apparently viewed the rights of their client in the fund as one turning on ownership, assuming that, once the client is divested of that ownership, the client loses a financial interest in the retainer. If that is counsel's position, it is inaccurate and inconsistent with the applicable Rules of Conduct. While they do not use the specific terminology, in my view, counsel is attempting to establish that the retainer is "earned upon receipt."

The conduct of practitioners before the federal court are governed by the rules and established standards of professional conduct of that court. *I.B.M v. Levin,* 579 F.2d 271, 279 at n. 2 (3rd Cir.1978). In applying those standards, our Circuit has looked to the ABA Model Code of Professional Responsibility, and the Model Rules of Professional Conduct. *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 160 (3rd Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

The ABA Model Rules of Professional Conduct states:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and *refunding any advance payment of fee that has not been earned.* (Emphasis ours.)

ABA–AMRPC Rule 1.16

Therefore, to the extent that those services are not rendered, the retainer is not earned and, it is refundable upon termination of the contract. It is here, when the client retains an interest in the retention fund, that concern is voiced as to the rights of counsel to utilize these monies as their own. *In re Prudhomme,* 43 F.3d 1000, 1004 (5th Cir. 1995). This remains true regardless of whether the original source of that retainer

was the debtor or others. *In re Grossman,* 1996 WL 389324, at *4 n. 1 (Bankr.E.D.Pa. 1996) *relying on* 11 U.S.C. § 329.

. The agreement at issue gives no indication that it represents a classic retainer.[3] It contains no reference to securing the lawyer's "availability." It sets apart no amount that could be interpreted as consideration separate from counsel's hourly rate, and it specifically articulates that the retainer is of an advance fee nature and in payment of contemplated legal services.

Nevertheless, the statement in the fee agreement that "[o]wnership of the retainer passes to this firm at the time the advance fee retainer is paid" implies that there is no obligation to distinguish between the earned and the unearned portion of that retainer and, contrary to Rule 1.16, no refund is possible. Supporting the Court's conclusion in this regard is the statement that "[t]he retainer will not be maintained in our client escrow account," which, again, suggests that the full retainer will be considered by the law firm as "earned upon receipt" and, thus, not refundable upon the termination of services.

Counsel has attempted to utilize the retainer as both a deposit toward future services and as a guarantee of availability,—a type of *hybrid retainer combining the characteristics of advance payment with the concept of being "earned upon receipt."* [4]

. [N]o matter how the arrangement is characterized or denominated by the lawyer in the fee agreement, in substantially all cases where a hybrid retainer is used, the advance fee will be intended as prepayment for actual services to be rendered rather than for availability. In other words, we expect the ordinary client in ordinary circumstances to believe that payment is being made against actual services rather than for availability. Moreover,

once an attorney has agreed to provide specific services, she has agreed to be "available" to perform those services. This is not the "availability" that is the essence of the general retainer. (Footnotes omitted.)

Lester Brickman and Lawrence A. Cunningham, *Nonrefundable Retainers Revisited,* 72 N.C.L.Rev. 1, 25–26 (1993).

Professor Brickman's conclusion is supported by the astute observations made by the Supreme Court of New York in the following quote.

The contract under which an attorney is employed by a client has peculiar and distinctive features which differentiate it from ordinary contracts of employment. It is a firmly established rule that as far as the attorney is concerned, the contract is entire and the attorney cannot recover under the contract unless he or she completely performs. The client, with or without cause, may terminate the contract at any time (Martin v. Camp, 219 N.Y. 170, 114 N.E. 46, amended 220 N.Y. 653, 115 N.E. 1044). We find that any attempt by the attorney to hinder that right contravenes the Code of Professional Responsibility by which all attorneys are bound [5].

*In the Matter of Cooperman,* 187 A.D.2d 56, 60, 591 N.Y.S.2d 855, 857–58 (1993).

Webster's New Collegiate Dictionary defines "earn" as " to come to be duly worthy of or entitled or suited to." Webster's New Collegiate Dictionary 354 (1975). As suggested by *Cooperman,* a fee is not typically "earned" until services are fully performed.

Moreover, the Doran & Nowalis fee agreement purports to authorize counsel to accept the pre-petition retainer in return for a certain quantity of post-petition legal services to be supplied by the firm. The fee agreement articulates that "a primary component of our

---

**3.** Notwithstanding that, paragraph 9 of the Application for retention reads: "Such a retainer is also warranted by the fact that Doran & Nowalis has a significant presence in the District in chapter 11 cases and its retention by the debtor in possession will preclude the firm from representing any other interest in this case."

**4.** A retainer remarkably similar to the one at bar was cited as an example of a hybrid retainer in

Pamela S. Kunen, *No Leg to Stand on: the General Retainer Exception to the Ban on Nonrefundable Retainers Must Fall.* 17 Cardozo L.Rev. 719, 738 n. 24 (1996).

**5.** DR 2–110(A)(3) of the Code of Professional Responsibility now appears, in slightly different format in Rule 1.16(d) of the Rules of Professional Conduct.

fee will be our current hourly rate for legal services." The clear implication of that statement *should be* that the unused portion of the retainer will be refunded to the estate of the Debtor–in–Possession, or from whatever source that retainer was received. This is, quite clearly, recommended by the Pennsylvania Bar Association. 1995 WL 902545 (Pa. Bar. Assn. Comm. Leg. Eth. Prof. Resp.) (1995).

It is this rather conspicuous attempt by Doran & Nowalis to secure unilateral control over the retainer fund in partial payment of future services that leaves this Court little choice but to strike the arrangement between the Debtors–in–Possession and counsel. In a bankruptcy case, I simply will not approve a non-refundable special retainer as, I believe, it is contrary to the Rules of Professional Conduct. Moreover, I will not authorize a post-petition "draw-down" of a retainer without notice, contrary to 11 U.S.C. § 330.

When considering the special retainer agreement, the clients' interest in the retention fund turns, not on the "ownership of the fund," but on the extent to which the retainer has been "earned." It is this concept of being "earned" that removes the debtor's last vestige of equitable interest from the retainer.[6]

Upon termination of services, the unearned portion of a retainer must be returned to the source regardless of whether the retainer is in the lawyer's operating account or in counsel's trust account.

The fact that others retain an interest in the retainer compels the conclusion that, before it is released to the discretionary use of counsel in the lawyer's business operation, it be reviewed by this Court under the provisions of 11 U.S.C. §§ 327–330.

Although the ability of counsel to draw down on a pre-petition retainer without court approval, during bankruptcy, was not specifically before the court in *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 459 (Bankr.M.D.Pa.1996), Chief Judge Woodside expressed similar reluctance to approve such

a practice. *Id.* at 461. Not only do I share that reluctance, but I will prohibit it in those cases at issue.

While not essential to this Court's decision, I would be remiss if I did not comment on the practice of counsel in depositing advance fee retainers into the lawyer's operating account.

The vast majority of jurisdictions that have studied the question of whether an advance fee retainer should be deposited in a lawyer's operating account or counsel's trust account have concluded that, until earned, that fee is the client's fund and should be deposited in a trust account. Lester Brickman, *The Advance Fee Payment Dilemma: Should Payments be Deposited to the Client Trust Account or to the General Office Account?,* 10 Cardozo L.Rev. 647, 649 n. 20 (1989). ("By an almost 2:1 margin, the opinions provide that advance fee payments must be deposited to the trust account.") Nevertheless, the opinions in Pennsylvania have not unequivocally accepted that position. The Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility has expressly found "that, with adequate disclosure, there is nothing inherently unethical or inappropriate with an attorney depositing a refundable retainer payment into the attorney's general operating account and treating such funds as the attorney's property, provided that the amount of any unearned portion shall promptly be returned to the client at the conclusion or termination of the representation." 1995 WL 902545, *3 (Pa.Bar. Assn.Comm.Leg.Eth.Prof.Resp.) (1995). The Committee concluded that the appropriate inquiry should be the "expectations of the parties," while qualifying that statement by requiring that retainer payments be deposited into a client escrow account in the absence of a clear written statement or agreement to the contrary, "as a prophylactic measure aimed at promoting public trust and confidence in the profession."

---

**6.** It has been advocated by at least one author that examination of retention agreements should focus, not on their label, i.e., general or special, or their refundability, but, rather, on whether the

funds held by counsel have been earned. Alexander K. McKinnon, *Analytical Approaches to the Nonrefundable Retainer* 9 Geo.J.Legal Ethics 583, 601 (1996).

This conclusion is somewhat contrary to that expressed by the Philadelphia Bar Association Professional Guidance Committee in Guidance Opinion Number 96–7 which concluded that all refundable retainers should be deposited into the lawyer's trust account. In accord, *Office of Disciplinary counsel vs. Anonymous,* No. 98 DB 92.

■ Upon reflection, it is this Court's opinion that the majority view is more sound. When the context of an imminent or pending bankruptcy is superimposed on the attorney-client relationship, the better course is to deposit the advance fee retainer in a trust account. The potential refundability is a right that accrues to the debtor-in-possession, *or,* the trustee, or, for that matter, to any other "entity that made such payment [7]," not necessarily the original client. Over-reaching by lawyers at a time when both client and creditors are most vulnerable is a historic phenomena noted by a number of jurists. *In Re Engel,* 124 F.3d 567, 573 (3rd Cir.1997), *In re Eric Alden Lewis,* 113 F.3d 1040, 1045 (9th Cir.1997), *In re Busy Beaver Bldg. Ctrs.,* 19 F.3d 833, 844 (3rd Cir.1994), *In re Walters,* 868 F.2d 665, 668 (4th Cir. 1989), *Matter of 268 Ltd.,* 789 F.2d 674, 677 (9th Cir.1986). Finally, 11 U.S.C. § 329(b), authorizing the disgorgement of an excessive legal fee, would be best implemented if the retainer was not accessible to counsel until allowance by the court.

It is for these reasons that the Applications to appoint counsel, under the terms enunciated therein, are denied. The retainers in question are ordered transferred to an appropriate escrow account pending further orders of this Court.