**In re OLD SUMMIT MANUFACTURING, LLC, Debtor.**

**In re Summit Alabama, LLC, Debtor.**

**Nos. 5–02–02811, 5–02–02812.**

United States Bankruptcy Court, M.D. Pennsylvania.

April 14, 2004.

Neal D. Colton, Cozen O'Connor, Philadelphia, PA, for Debtor.

David A. Eisenberg, Allentown, PA, for Trustee.

## OPINION [1]

JOHN J. THOMAS, Chief Judge.

William G. Schwab, Chapter Seven Trustee to the above-captioned estates, brings this Amended Objection to the Final Fee Application of Debtors' attorney, the law firm of Cozen O'Connor, and also requests disgorgement of any funds previously received as compensation and expenses by the firm as counsel for the Debtors. The final fee application requests compensation for fees in the amount of $293,747.50, together with expenses of $32,626.65, for the period between July 8, 2002 through and including February 28, 2003. The Trustee filed a plethora of objections to the final fee application which can be summarized as follows:

1. The total request for fees and expenses are "excessive and improper" when viewed in conjunction with pre-bankruptcy fees received by Cozen O'Connor totaling $440,-000.00 [2];

2. Cozen O'Connor did not disclose pre-petition fees and retainers on its 2016 disclosure statement;

3. Cozen O'Connor received payment for fees prior to the Court entering Orders approving the several fee applications;

4. In the several fee applications filed, Cozen O'Connor did not differentiate between those attorneys' fees and expenses incurred on behalf of both of the above-captioned estates even though a Court Order dated August 15, 2002 directed that the estates of both Debtors would be jointly administered but that accounts were to be kept separate;

5. Cozen O'Connor is not a "disinterested" person as defined by the United States Bankruptcy Code because in the affidavit attached to its application, it acknowledges that it represents certain "general creditors" of the Debtors including "insurance companies and insureds that are creditors" and it further represents certain insurance companies in subrogation claims where the insured is named as a plaintiff;

6. Cozen O'Connor, in formulating the plan for the Debtors, did not contemplate the filing of preference and fraudulent conveyance actions involving certain creditors that were presently Cozen O'Connor clients;

7. The receipt of either or both fraudulent conveyance and preference payments make Cozen O'Connor not "disinterested";

8. The compensation requested is excessive when compared to the cost benefit to the estate;

9. To the extent that any compensation or expenses are provided to Cozen O'Connor and determined to be a benefit of the estates, the Trustee

---

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

2. Part of the prepetition receipts included $140,000.00 which was used to fund the Key Employee Retention Plan (KERP) to pay eligible, necessary employees a retention payment. (See Trustee Exhibit No. 17.) The KERP was approved by Order dated Aug. 15, 2002.

requests the compensation and expenses be reduced to a lower hourly rate reflecting local rates.

Cozen O'Connor's response to the objection can be summarized as follows.[3] Cozen O'Connor addresses the "unreasonableness" allegations of the Objection by indicating that it sought approval for payment of several interim fee applications, all of which were not objected to by the Trustee, the United States Trustee, and all creditors of the estates. It asserts that the baseline rule for professional fees is for a firm to receive its customary rates and to that end, those rates were included in the fee application to which no entity, including the Court, filed an objection. The Bankruptcy Court for the Middle District of Pennsylvania has also approved rates if not identical to, then similar to, those approved in other Chapter Eleven cases. The pre-petition relationship and the urgent nature of the bankruptcy proceedings leads to only one conclusion; the fees Cozen O'Connor charged were reasonable.

As to the "disinterestedness" allegation of the objection, Cozen O'Connor, citing 11 U.S.C. § 327(c), responds that the Court should disapprove employment of a person on behalf of the Debtor if there is an actual conflict of interest. A professional's previous or concurrent employment or representation of a creditor of the estate, by itself, does not bar employment unless there is an actual conflict of interest. Once again, the affidavit by Cozen O'Connor attached to the application disclosed all potential conflicts and the steps Cozen O'Connor took to alleviate any potential conflicts. Neither the United States Trustee nor any creditor objected to Cozen

O'Connor representing the Debtors because of conflicts of interest which may have arisen by the dual representation of the Debtors and any creditors. Cozen O'Connor argues that it meets all the requirements set forth in the Bankruptcy Code to be considered a disinterested professional.

Addressing the allegations that Cozen O'Connor did not allocate the fees between the two separate estates, Cozen O'Connor indicates that argument is "misplaced" given that the money used to compensate Cozen O'Connor came from a bank group's cash collateral and did not belong to the Debtors' estates. Since the bank group's secured claim was well in excess of any monies the estates could hope to collect, any fund returned to the Trustee by Cozen O'Connor would simply be turned over to the bank group to reduce its deficiency claim.

Cozen O'Connor takes the position that the retainer it received was an "advance fee retainer", which Cozen O'Connor accepted as pre-payment for future services. This qualified Cozen O'Connor, as the owner of the pre-petition retainer funds, to immediately draw on those funds at the time it performed pre-petition legal services. The argument continues that this arrangement did not make Cozen O'Connor a pre-petition creditor of the Debtors. This legal relationship, the argument follows, is consistent with *In re Pillowtex, Inc.*, 304 F.3d 246 (3rd Cir.2002) and the principles annunciated by this Court in *In re Gray's Run Techs., Inc.*, 217 B.R. 48 (Bankr.M.D.Pa.1997). Furthermore, Cozen O'Connor argues it only treated the

---

**3.** Cozen O'Connor did not file a response to the Amended Objection. The Amended Objection differs from the original Objection to the Fee Application (Doc. # 259 at ¶ 17) by adding allegations that Cozen O'Connor received pre-petition fees and retainer above the

amount disclosed in their 2016 disclosure statement and that Cozen O'Connor failed to accurately disclose monies paid to them on the 2016 disclosure statement, the Statement of Financial Affairs, and Schedule B.

retainer as income when it earned such income and, but for a final reconciliation that took place after the filing of the petition, the full retainer was earned by Cozen O'Connor pre-petition. The relationship stands in stark contrast to that in the *United States v. Price Waterhouse,* 19 F.3d 138 (3rd Cir.1994), upon which the Trustee relies in support of its allegation that Cozen O'Connor was a pre-petition creditor.

## DISCUSSION

The facts established through testimonial and written documentary evidence submitted at trial are as follows. On July 8, 2002, the above jointly administered cases were filed under Chapter 11 of the United States Bankruptcy Code. Also on July 8, 2002, the Debtor filed an Application for Entry of an Order Authorizing the Retention and Employment of Cozen O'Connor as Counsel to the Debtor. With no objection being registered to that Application, the Court entered an Order approving Cozen O'Connor's retention as counsel by Order dated July 18, 2002.[4] Both Rule 2016(b) disclosures indicate that prior to the filing of the statement, Cozen O'Connor received a $175,000.00 retainer and did not receive prepetition payments related to debt counseling. The disclosures further indicated that the $175,000.00 was an aggregate retainer received for both of the captioned bankruptcy cases. On direct examination by the Trustee, Neal Colton, an attorney for Cozen O'Connor, testified that on April 9, 2002, the firm received a check in the amount of $75,000.00 and that on June 26, 2002, it received a wire transfer for $50,000.00 from Summit Manufacturing, LLC. A further wire transfer of $175,000.00 was received by the law firm on July 5, 2002. See Transcript dated

July 24, 2003 at pp. 13–14 (Doc. # 306). The Statement of Financial Affairs for Summit Manufacturing, LLC at question number 9 reflects that the law firm received a payment of $300,000.00 within one year immediately preceding the commencement of the case but there was no indication of the date of payment. See Trustee's Exhibit No. 4. On the date of the filing of the Petition, the law firm had approximately $33,000.00 of time that had not yet been billed and the law firm's retainer account had approximately $26,000.00 remaining that could be applied to prepetition work. See Transcript, *supra,* at p. 15. While there existed a fee agreement letter between the parties, Mr. Colton could not answer whether the fee agreement letter gave the law firm a security interest in the prepetition retainer. See Transcript, *supra,* at p. 16. He further indicated that on the date of the filing, the law firm was a creditor of both companies for $26,000.00. See Transcript, *supra,* at p. 17. Upon further questioning, the law firm also held $140,000.00 by way of a prepetition wire transfer on July 3, 2002, to be used in the event the Court approved a retention bonus plan. This $140,000.00 was not disclosed in either Schedule B or in the Statement of Financial Affairs for both Debtors. By a postpetition letter dated August 2, 2002, the law firm informed the Debtor, Summit Manufacturing, LLC, that there was a balance in the prepetition retainer at the time of the filing of the bankruptcy of approximately $26,600.72, which was to be applied to the outstanding prepetition fees with the balance of the prepetition fees being written off. See Transcript, *supra,* at p. 26. A fee application was not filed prior to

---

4. Docket entry # 2 dated July 8, 2002 in the Summit Alabama case reflects an "Application to Employ Cozen O'Connor as counsel

for the debtor." The docket does not reflect that this application was ever adjudicated.

the offset for those prepetition services referenced in the August 2, 2002 letter.

Paragraph 16 of the law firm's Affidavit Pursuant to Bankruptcy Rule 2014, which was filed in support of the request to be appointed as counsel reads as follows:

16. Prior to the Petition Date, the Debtors paid CO [Cozen O'Connor] a retainer of $175,000 for services to be rendered in connection with the preparation and prosecution of the Debtor's bankruptcy case. Prior to the Petition Date, CO issued invoices to the Debtor for posted, and estimated unposted, professional fees, charges and disbursements incurred through the Petition Date. If the actual, unposted professional fees, charges and disbursements incurred through the Petition Date exceed the estimated amounts, then CO will waive any such outstanding balance on account of prepetition services.

Trustee's Exhibit No. 1.

While paragraph 16 indicates there was a retainer of only $175,000.00 for services to be rendered in connection with the preparation and prosecution of the Debtor's bankruptcy case, Mr. Colton, on behalf of the law firm, testified that he actually had received $300,000.00 prepetition. Of that amount, $175,000.00 was a Chapter 11 retainer and not a retainer for prepetition services. The discrepancy between paragraph 16 of the Application and the $175,000.00 as a Chapter 11 retainer was actually disclosed in the Schedules at paragraph number 9 indicating that $300,000.00 had been paid to Cozen O'Connor on a prepetition basis. There was also the matter of $140,000.00 which was wired to Cozen O'Connor (the retention payments) which Mr. Colton testified were never funds of the law firm and, to his knowledge, were distributed to the individuals who were authorized by the Court to receive retention bonuses. As to the postpe-

tition billing for prepetition services, Mr. Colton indicated that the final statement for prepetition services was presented after the bankruptcy, with the difference between the amount of the bill and the retainer being written off postpetition, and it could not be written off until the books and records of the law firm were brought current at the end of the month.

There was substantial examination of Mr. Colton concerning the breakdown of time Cozen O'Connor spent on the representation of Summit Alabama as opposed to Old Summit. Mr. Colton indicated that perhaps only one percent of the total time would have been on behalf of Summit Alabama. See Transcript, *supra*, at p. 42. He further testified that Summit Alabama was not operating at the time of the filing of the petition. On cross examination, Mr. Colton said that all of the communications of the law firm were done with management of Old Summit because there was no separate management for Summit Alabama. As far as a prepetition strategy for workout with the lenders, both companies were considered to be one entity and it was the objective of the shareholders as well as the management of Old Summit, which was the sole owner of Summit Alabama, to try to preserve the most value and sell the entities as a going concern. See Transcript, *supra*, at p. 50. The Affidavit of disinterestedness attached to the application to be appointed counsel indicated the law firm had been paid a retainer of $175,000.00 for services while, at the same time, omitting any reference to the two prepetition wire transfers of $125,000.00. Mr. Colton testified it was his firm's policy to fully disclose all compensation received, whether prepetition or postpetition. He further admitted full disclosure was not made in this case. He reasoned the error was likely due to the prepetition rush to complete the documentation with insuffi-

160

cient attention given to the Affidavit. See Transcript, *supra,* at p. 60. Paragraph 16 of the Affidavit indicated Cozen O'Connor issued invoices prepetition to the Debtors for both posted, and estimated unposted fees and charges incurred through the petition date. Mr. Colton also testified this was not true in this case and, again, reasoned it was because of a lack of attention to this portion of the Affidavit. He testified the Debtors had been invoiced for services actually entered into the Cozen time recording system for the prepetition period and they were further informed that, on a postpetition basis, the balance of time would ultimately be evidenced by a statement.

Attention to the conflict of interest between the Debtor and certain other clients represented by Cozen O'Connor was broached while on cross examination of Mr. Colton. He testified about the process by which the firm checks to see if there are conflicts of interest, (Transcript, *supra,* at pp. 62–63), and indicated they had standing waivers from its institutional creditors that permitted Cozen O'Connor to represent Debtors whenever these entities were creditors of that Debtor. See Transcript, *supra,* at p. 63. When addressing the $140,000.00 transferred to Cozen O'Connor prepetition, that money was to be held in escrow for bonuses in what was described as a key employee retention plan. (Transcript, *supra,* at p. 64.) This became memorialized in the key employee retention motion which was marked as Trustee's Exhibit No. 17. The fund was not created to fund legal work. Upon further examination, Mr. Colton was not able to identify the ultimate distribution of those funds.

Also testifying was Mr. Robert M. Caster, a certified public accountant and partner in the firm of Concannon, Gallagher, Miller & Company, with a practice princi-pally involved with the area of insolvency accounting, bankruptcy fraud, litigation and support. Mr. Caster was qualified and called as an expert witness in these areas. He was employed by the Creditors' Committee of both Debtors and his instructions were to review the books and records of both Debtors. Mr. Caster confirmed that pursuant to an Order of Court, Summit Alabama was authorized to deposit its accounts receivable payments into the operating account of Summit Manufacturing, (Trustee's Exhibit No. 9). Further, while the Order called for the creation of one bank account, within that account two separate records had to be established segregating the accounts receivable for both of the Debtors. See Transcript, *supra,* at pp. 86–87. Trustee's Exhibit No. 12 was a tentative schedule of potential trade preference payments greater than $1,500.00 for the ninety day period prior to the filing of the case. On page 5 of that schedule, it reflects 4 payments to Cozen O'Connor totaling $440,000.00. Mr. Caster indicated that because it was in the early stages of his review and of the case, he would "put almost anything of concern on this trade preference schedule. It may not be a pure preference-trade preference schedule. Certainly, Cozen O'Connor are not a vendor, per se, it's a professional firm." See Transcript, *supra,* at pp. 88–89. Mr. Caster indicated these payments could be fraudulent conveyances. The remainder of Mr. Caster's testimony concerned a companion motion set for hearing on the same day addressing the Trustee's Motion to Allocate Funds between the estates. That Motion will be dealt with in a separate Opinion and Order by this Court.

As is often the case with our analysis of any core issue under the United States Bankruptcy Code, we begin with the pertinent statutory language.

## § 327. Employment of professional persons

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are *disinterested* persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

## § 328. Limitation on compensation of professional persons

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a *disinterested* person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

## § 101. Definitions

In this title—

(14) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider; ...

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

To reiterate, the Trustee asserts that Cozen O'Connor is not disinterested for a variety of reasons namely: Cozen O'Connor was a creditor of the Debtor at the time of the filing of the bankruptcy; Cozen O'Connor received preferences, prepetition fraudulent conveyances, or fraudulent postpetition conveyances from the Debtor; Cozen O'Connor represented creditors of the estate which pose an actual conflict of interest with other unsecured creditors of the estate.

■■■■ I will begin by determining what the status of the relationship was between Cozen O'Connor and the Debtor as of the date of the filing of the petition. I am instructed by *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3rd Cir.1994), that under the provisions of Section 101(10)(A), a debtor is forbidden from retaining a prepetition creditor to assist in the execution of its Title 11 duties. The Trustee argues that at the time of the filing of the bankruptcy, Cozen O'Connor was a creditor of the Debtor because one month after the filing of the bankruptcy, Cozen O'Connor paid itself approximately $26,000.00 from a prepetition retainer for prepetition debt. Cozen O'Connor responds it received advanced payment from retainers for prepetition legal work and, in this case, it had every right to the full amount of the retainer at the time it performed prepetition services for the Debtors but did not take the money until a final reconciliation could be completed which occurred postpetition. In effect, Cozen O'Connor argues it had the equivalent of an advance fee retainer in which the ownership of the funds passed to the attorney at the time of the payment. (See Post–Trial Letter Brief of Cozen O'Connor (Doc. # 278) at p. 2.) Of assistance would have been the actual retainer agreement, but it was not offered into evidence by either

party.[5] In the case of a security retainer, the attorney holds the retainer to secure payment of fees for future services which do not constitute a present payment but remain the property of the debtor until the attorney applies it to charges for services actually rendered. See *In re Pannebaker Custom Cabinet Corp.*, 198 B.R. 453 (Bankr.M.D.Pa.1996). "The general rule is that, unless shown to be otherwise, a retainer constitutes funds held in trust for the benefit of the debtor, i.e., a security retainer." *Id.* at 459. On direct examination, Mr. Colton could not recall whether the retainer agreement gave Cozen O'Connor a security interest in the retainer. He indicated that on the date of the bankruptcy, Cozen O'Connor was a "secured creditor" of both companies for $26,000.00. See Transcript, *supra*, at p. 17, lines 11–20. The burden rests with the professional to establish whether the retainer being held is "classic", "flat fee", or an "advanced payment" retainer. *Pannebaker*, 198 B.R. at 460, citing *In re Mondie Forge Co.*, 154 B.R. 232, 238 (Bankr.N.D.Ohio 1993). Under the circumstances presented, together with the lack of knowledge by Mr. Colton concerning the underlying terms of the fee agreement, the Court determines the retainer in question is of the "security" type. If I make a determination that Cozen O'Connor was a creditor of both estates prior to the filing of the bankruptcy, then I must, by necessity, find that they are not disinterested under the definition found in Section 101(14)(A). I find that the postpetition draw-down of the retainer without notice to all creditors and prior approval of this Court, in the approximate amount of $26,000.00, is contrary to 11 U.S.C. § 330.

*In re Gray's Run Technologies,* 217 B.R. 48 (Bankr.M.D.Pa.1997). Even if I found the retainer to be of an "advance fee" nature, my determination would be the same. *Id.* at 53.

Situations such as the present, where the Debtor has hired a creditor to assist in the execution of the Chapter 11 case, have been addressed by the Third Circuit in the case of *United States Trustee v. Price Waterhouse,* 19 F.3d 138 (3rd Cir.1994). The Third Circuit ruled that 11 U.S.C. § 327(a) prohibits the debtors from employing a creditor of the estate. But, what type of sanctions can this Court impose when a creditor has been improperly employed by the estate? The Trustee has requested that the Court deny the final fee application of Cozen O'Connor and to disgorge all funds previously received as compensation and expenses. The Third Circuit, in the *Price Waterhouse* case, interpreted 11 U.S.C. § 328(c) "to mean that if a non-'disinterested' professional person is improperly employed, or if a professional person ceases to be 'disinterested' 'at any time during such professional person's employment,' the court *may* deny compensation and reimbursement." *Id.* at 142. (emphasis added)

██ A court's determination as to whether to deny fees to a professional who is not disinterested falls within the sound discretion of the Bankruptcy Court. *Electro–Wire Products, Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356 (11th Cir.1994).

██ The Court will exercise its discretion and allow fifty percent (50%) of the

---

**5.** Document No. 283 filed with the Court on August 8, 2003 is an Addendum to the Post-Trial Letter Brief filed by Cozen O'Connor at Doc. No. 278. Attached to the Addendum is purportedly an engagement letter between Summit Manufacturing, LLC and Cozen O'Connor. Neither an agreement by the parties to open and supplement the record nor a request was made of this Court to do so and, therefore, the letter agreement will not be considered a part of this determination.

services earned postpetition and order disgorgement of the balance to the Trustee. The Court renders this decision based upon the following. Once a finding is made that Cozen O'Connor was not disinterested because it was a prepetition creditor of the estate, further consideration of the Trustee's rationale for disgorgement is not required. The determination to compel a disgorgement of fifty percent (50%) of the postpetition fees is not based solely on the finding that Cozen O'Connor was not disinterested. The Court is disturbed by the lack of attention given to Cozen O'Connor's filing of the Affidavit in support of its Application to be employed as counsel for the Debtor as referenced above, particularly at paragraph 16 of the Affidavit, and by the inadequacies obviously represented in the Rule 2016(b) Statement of Compensation which was filed in this case. Neither of those documents reflected the true extent of the fees and compensation received by the law firm in this matter. The Court simply cannot let these indiscretions go without comment and hopes that Mr. Colton's assessment that this is not the regular practice of the law firm in bankruptcy matters is indeed the case. On the other hand, the Court finds the law firm provided substantial benefit to the estate and those efforts should not go completely unrewarded. It is for these reasons that the Court finds that a fifty percent (50%) disgorgement of the postpetition fees for compensation for hours spent by the lawyers is a reasonable sanction under the circumstances.

Regarding the remaining grounds upon which the Trustee requests this Court to disgorge and deny total compensation, the Court makes the following comments. As to the prepetition fees and expenses, they are the subject of separate adversary proceedings filed by the Trustee against Cozen O'Connor P.C., requesting determinations that the prepetition transfers could be avoided as preferential payments under 11 U.S.C. § 547 and fraudulent transfers under 11 U.S.C. § 548. There is also a count concerning postpetition transfers under 11 U.S.C. § 549 concerning what the Trustee argues are the unauthorized payments for fees and expenses by the Debtor to Cozen O'Connor prior to the filing of appropriate applications.[6]

The Trustee makes further argument that the compensation requested of hourly fees of $495.00 charged by Cozen O'Connor to the estate were unreasonable. The Trustee indicates the average hourly rate for the lawyers and law firms that practice in the geographical area of the Middle District of Pennsylvania is $200.00 per hour. Once again we look to the Third Circuit for guidance. These issues were addressed in the case of *Zolfo Cooper & Co. v. Sunbeam–Oster Co., Inc.,* 50 F.3d 253 (3rd Cir.1995), in which the court wrote that the baseline rule for firms is to receive their customary rates. The court wrote "the idea that a firm should be restricted to the hourly rate typical in the locale of the case 'is unduly parochial particularly in this age of national and regional law firms working on a larger more complex bankruptcy case of more than local import.'" Citing *In re Robertson Cos.,* 123 B.R. 616, 619 (Bankr.D.N.D.1990). We have previously granted hourly rates in excess of that presented by Cozen O'Connor and find that in this case, the hourly rate charged was not unreasonable.

Finally, Mr. Colton testified if he had to allocate the amount of time on all the billing that was done on behalf of Summit

---

**6.** To the extent not disposed of by this Opinion, the Adversary referenced, filed to no. 5–03–50231, shall remain pending, subject to this Opinion and related Order becoming final and nonappealable.

Alabama as opposed to Old Summit, "it would probably be one percent." See Transcript, *supra,* at p. 42. Because the amount of time spent on work done on behalf of Summit Alabama as opposed to Old Summit is so diminutive, the Court finds that it has no impact on the current request to disgorge fees received by Cozen O'Connor and to deny the final fee application.

Based upon the foregoing, the Court orders Cozen O'Connor to disgorge to the Trustee fifty percent (50%) of the total fees received by Cozen O'Connor for post-petition services.

An Order will follow.