50 A.3d 1222

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Katrice Selena STINSON.

Misc. Docket AG Nos. AG 30 and 70, Sept. Term, 2009.

Court of Appeals of Maryland.

Aug. 21, 2012.

148

Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Katrice Selena Stinson, Washington, DC, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY,* BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

PER CURIAM.

Pursuant to Maryland Rule 16–751,[1] the Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar

---

\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision or adoption of this opinion.

1. Maryland Rule 16–751(a)(1) provides:

Counsel, filed a Petition for Disciplinary or Remedial Action against Katrice Selena Stinson ("Respondent"), a Maryland attorney who alleged she had offices in the State. Petitioner charged that Stinson committed professional misconduct arising out of the fees she charged to two clients, Dr. Rose Merchant and Kara McIntosh. Based on Respondent's conduct in the Merchant complaint, Petitioner charged Respondent with violating Rules 1.4 (Communication),[2] 1.5 (Fees),[3]

---

Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MLRPC 1.4 provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

3. MLRPC 1.5 provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

1.15 (Safekeeping Property),[4] 1.16 (Declining or Terminating Representation),[5] 7.5 (Firm Names and Letterheads),[6] 8.1 (Bar

---

    (8) whether the fee is fixed or contingent.

    (b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

4.   MLRPC 1.15 provides:

    (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

*    *    *

    (c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

    (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

5.   MLRPC 1.16(d) provides:

    (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

6.   MLRPC 7.5(b) provides:

Admission and Disciplinary Matters),[7] and 8.4 (Misconduct) [8] of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). As a result of the McIntosh complaint, Petitioner charged Respondent with violating Rules 1.5, 1.15, 1.16, 7.5, and 8.4. In accordance with Maryland Rule 16–752(a) [9] and 16–757(c),[10] we referred both matters to the Honorable Mi-

---

(b) A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.

**7.** MLRPC 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

*　　*　　*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**8.** MLRPC 8.4 provides in relevant part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

**9.** Maryland Rule 16–752(a) states:

(a) **order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

**10.** Maryland Rule 16–757(c) states in pertinent part:

(c) **Findings and Conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the

chele D. Jaklitsch of the Circuit Court for Anne Arundel County to conduct evidentiary hearings and to submit to this Court proposed findings of fact and conclusions of law for each complaint. For the Merchant complaint, Judge Jaklitsch heard evidence over a 2–day period and filed a 25–page opinion in which she made detailed findings of fact and conclusions of law, culminating in a determination that Respondent violated Rules 1.4(b); 1.5(a) and (b); 1.15(a) and (c); 1.16(d); 7.5(b); 8.1(b) and 8.4(c). For the McIntosh complaint, Judge Jaklitsch conducted a two-day evidentiary hearing and filed a 21–page opinion in which she concluded that Respondent violated Rules 1.5(a); 1.15(a), (c) and (d); 1.16(d); 7.5(b) and 8.4(a). Respondent filed written exceptions to the hearing judge's findings of fact and conclusions of law in both cases. Bar counsel filed no exceptions in either case.

## FINDINGS OF FACT

### Merchant Complaint

Respondent was admitted to practice law in Maryland on December 16, 1999 and is a solo practitioner who is not admitted to any other state Bar or to any Federal Bar. From June 2008 to the time of her deposition by Bar Counsel on April 28, 2010, Respondent did not maintain an attorney trust account.

On June 3, 2008, Dr. Rose Merchant ("Merchant") contacted Respondent regarding possible legal representation for two matters. The first involved a potential wrongful termination claim against her former employer, Prince George's County Department of Corrections. The second involved a possible wrongful arrest claim against Fairfax County, Virginia. During their initial telephone conversation, Respondent and Merchant agreed to meet the next day, June 4, 2008 at 11:00 a.m. at Merchant's home. Respondent informed Merchant that this, in person meeting, would be a free initial consultation.

conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

The first one and a half to two hours of the June 4, 2008 consultation focused on Merchant's two possible lawsuits. The topic of their meeting eventually shifted to discussion of Merchant's marriage to Raphael Desmond Clark, however. Respondent and Merchant discussed the possibility of ending Merchant's marriage to Clark. The consultation started around 11:00 a.m., but around 8:00 p.m., Clark returned home from work. At that time, Respondent instructed Merchant that she would need to pay $7,000.00 "for an engagement and retainer fee." Respondent did not provide Merchant with a written fee agreement at that time and did not explain the basis of this fee. Before she left the consultation, Merchant presented Respondent with a $7,000.00 check. After leaving Merchant's home, Respondent deposited the $7,000.00 check via an ATM into a Bank of America account. The account was not an attorney trust account, and at no point was Merchant's $7,000.00 held in an attorney trust account.

Following the June 4 consultation, Merchant testified that she believed that Respondent was going to provide representation for the employment law matter against Prince George's County and for a possible divorce or annulment of her marriage. Merchant also understood after the meeting that Respondent would not be providing representation for the wrongful arrest matter. The parties agreed to meet the next day, June 5, 2008, so that Respondent could assist Merchant with filing for a temporary restraining order ("TRO") against her husband.

On June 5, 2008, Respondent and Merchant met at the Courthouse in Upper Marlboro. Respondent was late to this meeting and was focused on other matters when she did arrive to the courthouse. It was not until 4:30 p.m. that Respondent met with Merchant. By that time, it was too late that day to file the TRO or the divorce/annulment complaint because the courthouse was closing. Respondent and Merchant moved the meeting to a restaurant near the courthouse and discussed some legal issues as well as non-legal matters. The meeting at the restaurant concluded after about two hours. Respondent did not provide a written fee agreement for Merchant or

inform Merchant about the basis of her fee during this second in-person meeting.

On June 6, 2008, Respondent and Merchant talked on the phone and exchanged e-mails about topics related to Merchant's husband. Merchant was concerned that Clark might have submitted fraudulent credit applications when purchasing two BMWs in both their names. Respondent drafted a letter to the BMW dealership which stated that Merchant desired to rescind the contracts for purchase of the vehicles. Another letter was drafted to Clark to advise him that the contracts were being rescinded and he needed to deliver the car back to the BMW dealership. The next day, June 7, 2008, Merchant called Respondent to inform her that the dealership was not going to accept possession of the BMW. The hearing judge noted that this conversation between the parties "was terse and limited only to the return of the vehicle."

On June 9, 2008, Merchant called Respondent to inquire about a written fee agreement. The parties agreed to meet that day at a restaurant in Bethesda, Maryland. At this meeting, Respondent provided Merchant with an "Engagement Fee Agreement," a client intake form, and a blank EEOC form. Merchant initialed each page of the fee agreement and signed the last page. The Engagement Fee Agreement provides in part: "An engagement fee is a nonrefundable fee paid by the Client for the Attorney's: (1) willingness to provide legal advice and services to the Client; (2) ensuring her availability to the Client; and (3) willingness and availability to represent the Client, for reasonable fees, in transactions and litigation."

During the two to three hour meeting on June 9, 2008, Merchant filled out the EEOC form while Respondent drafted a Complaint for Annulment. Although Merchant thought that Respondent was going to provide representation for the annulment matter, Respondent informed her that she would not enter her appearance as counsel and that Merchant would have to file the Complaint *pro se.*

On June 12, 2008, Merchant went to the Circuit Court for Prince George's County intending to file the *pro se* Complaint for Annulment. Prior to filing the Complaint, however, she met with an attorney at the legal services clinic at the courthouse and decided not to file the complaint. Merchant later spoke to another attorney about her legal issues. After these two conversations, Merchant decided she would terminate her attorney-client relationship with Respondent.

Merchant called Respondent on June 13, 2008, to terminate the relationship and to request a refund of at least $5,000.00. Respondent stated that she would not provide any refund because the $5,000.00 was non-refundable and the $2,000.00 retainer had already been spent on billable hours. Respondent also informed Merchant during this conversation that additional money was owed based on the billable hours that Respondent had already spent on Merchant's cases. According to Respondent, she was terminating the relationship because Merchant was not trustworthy and had "gone behind her back to seek other counsel."

Respondent drafted a letter dated June 13, 2008, to notify Merchant that she was terminating the Engagement Fee Agreement. Respondent enclosed a "LEGAL SERVICES BILLING SUMMARY" with the letter.

Respondent's billing summary contained charges for 39.5 billable hours for the period June 5 through June 13 at the rate of $335.00 per hour. Respondent claimed that Merchant owed a balance of $11,257.50 after crediting the $2,000.00 retainer. Respondent's billing included 10.0 hours for the "Intake Meeting" on June 4, 2008. This was the initial meeting between the parties that Respondent stated would be a free consultation. The "Client Meetings/Conferences" section of the billing summary also contained a 7.5 hour "Document Prep & Review Mtg." charge for the June 9 meeting that lasted only 2 to 3 hours. The "Document Preparation and Review" portion of the billing summary contained line items for the Pro–Se Annulment Complaint and the EEOC Charging Document. Respondent billed 1.5 hours for prepa-

ration of the EEOC document, notwithstanding that this was a pre-printed form where Merchant filled in the blanks.

Merchant sent a letter dated June 17, 2008, to Respondent to confirm her desire to terminate the attorney-client relationship. Merchant also confirmed her June 13 request for a refund of the $5,000.00 fee. Merchant obtained other counsel to represent her in the annulment process. William C. Johnson, Jr., Esq., ("Johnson") drafted a Complaint for Annulment and according to the hearing judge, he "used a majority of the averments that Respondent had drafted in her *pro se* Complaint given to Merchant." Merchant was granted a Judgment of Annulment by the Circuit Court for Prince George's County on March 10, 2009.

Respondent's June 13, 2008, letter and billing summary were both printed on letterhead that contained only a Washington, D.C. address for Respondent without any indication that she was not licensed to practice in the District of Columbia. Later correspondence with Petitioner contained the same address without any note of a jurisdictional limitation. In a January 16, 2009 letter to Petitioner, Respondent wrote that she had two offices in Maryland, but used a District of Columbia post office box for correspondence purposes. Respondent sent an April 2, 2010, letter to the Circuit Court for Anne Arundel County that did indicate that she was only admitted to practice in Maryland. Respondent did not reply to Petitioner's January 21, 2009, letter that requested the addresses of her two Maryland offices. She also refused to answer and objected to the same question during her April 2010 deposition by Bar Counsel.

### *McIntosh Complaint*

Respondent provided Kara McIntosh with her Pre–Paid legal Services business card after meeting at their children's school sometime prior to October 1, 2008. On October 1, 2008, McIntosh called Respondent to discuss some legal concerns regarding her business activities. Following this conversation, Respondent faxed McIntosh a "Small Business Client Intake Form" and an "Engagement Fee and Retainer Agreement."

The fee agreement required McIntosh to pay Respondent a $10,000.00 nonrefundable engagement fee and a separate initial retainer fee of $10,000.00. McIntosh received these forms on October 2, 2008, but chose not to employ Respondent because she did not have the necessary funds to pay the two advance fees.

On November 5, 2008, the Federal Bureau of Investigation (F.B.I.) executed a federal search warrant at McIntosh's home. McIntosh emailed Respondent November 10, 2008 and asked to speak to Respondent "right away." McIntosh and Respondent spoke on the telephone and made arrangements to meet the next day. On November 12, 2008, Respondent came to McIntosh's home and presented two separate fee agreements to McIntosh. The first was titled "Engagement Fee Agreement" and the second titled "Retainer Agreement." Respondent and McIntosh signed both agreements at this meeting.

The "Engagement Fee Agreement" required McIntosh to pay Respondent a "nonrefundable" engagement fee of $10,000.00, including an "initial deposit" of $6,000.00 due upon execution of the agreement and the balance of $4,000.00 due "on or before January 1, 2009." The "Retainer Agreement" provided for an initial retainer fee of $10,000.00, to "be paid by Client no later than February 1, 2008[sic]." This retainer fee would be applied towards future legal services, which were to be billed at the hourly rate of $335.00.

During the November 12, 2008 meeting, McIntosh wrote Respondent a check for $6,000.00 to cover the initial deposit for the "Engagement Fee Agreement." McIntosh requested that Respondent wait to cash the check because she needed to make a deposit into the account. Respondent said that she wanted her money that day and instructed McIntosh to bring a cashier's check to a meeting later that day. McIntosh's business partner was able to obtain a cash advance of $5,000.00 on a credit card and used these funds to purchase a cashier's check in the same amount made payable to Respondent. Respondent accepted the $5,000.00, but also requested

the balance of her money from McIntosh. Respondent did not deposit the $5,000.00 into an attorney trust account.

Respondent made two phone calls on behalf of McIntosh on November 13, 2008. The first was to Daniel Wortman ("Wortman"), a special investigator with the Office of the Montgomery County State's Attorney. The two talked for about five to ten minutes and Wortman advised Respondent that there was "quite a bit of evidence" against McIntosh from an investigation involving mortgage fraud. Respondent did not request a meeting to review any of the evidence. On that same day, Respondent also contacted Kwame Manley ("Manley"), an Assistant United States Attorney overseeing the federal criminal case. Manley stated that McIntosh was going to be charged with fraud and that her arrest was imminent. Manley discussed the possibility of a plea agreement in which McIntosh would plead guilty and cooperate with the government. In return, the government would make a motion to reduce her sentence. At the end of this phone call, Respondent agreed to meet Manley at his office.

Respondent and McIntosh met at a restaurant that day to discuss what Respondent had learned from Wortman and Manley. Respondent told McIntosh that she had arranged a meeting with Manley on November 14, 2008, to discuss a plea agreement. At the conclusion of the meeting, Respondent told McIntosh that she needed an additional $5,000.00 by 9:00 a.m. the next day to continue the representation. That next morning, November 14, 2008, McIntosh called Respondent and stated that she could not come up with the $5,000.00. Respondent sent an e-mail at 12:01 p.m. to McIntosh that thanked her "for apprising me this morning that you were unable to secure the funds necessary to retain me to represent you in the matters you have identified." Respondent also wrote that she "informed Mr. Manley, via voicemail, that I will not be representing you in these matters and that you have indicated to me that you prefer to turn yourself in rather than to have an arrest warrant executed upon you." Finally, Respondent informed McIntosh that she would be mailing "a refund check

for any remaining balance from the amount you tendered minus the hours that I have already worked on your matters."

McIntosh replied to this e-mail on November 14, 2008 at 2:14 p.m. acknowledging that Respondent should be compensated for her time, but she asked for the return of "the majority of the engagement fee" and an "itemization" of Respondent's services. Later that day, McIntosh informed Respondent that she had retained new counsel and requested a refund of "at least $3,000.00" to pay her new attorney. Respondent wrote back that the amount refunded "will not be anywhere near the $3,000.00 you have requested" and that "the Engagement Fee, and all parts thereof, is nonrefundable and I am entitled to compensation for the work that I have done on your behalf."

McIntosh was not able to obtain the funds necessary to pay her new attorney and had to attend a meeting with the F.B.I. on November 18, 2008 without having any counsel present. McIntosh stated that she "perjured" herself during this meeting. On the same day, a seven count Indictment was returned against McIntosh in the United States District Court for the District of Maryland. After the meeting with the F.B.I., McIntosh was arrested and spent one night in jail.

On November 25, 2008, McIntosh again requested a refund from Respondent and an itemization of the hours billed. Respondent replied the next day and stated that the engagement fee was "nonrefundable." Respondent did not refund the $5,000.00 and did not provide McIntosh with an itemized billing statement.

## CONCLUSIONS OF LAW

### Merchant Complaint

Judge Jaklitsch found by clear and convincing evidence that Respondent violated MLRPC 1.4, 1.5, 1.15, 1.16, 7.5, 8.1, and 8.4. As to Rule 1.15, Judge Jaklitsch made the following conclusions of law:

Respondent has admitted her failure to deposit any of Merchant's prepaid legal fees, including the $2,000.00 portion Respondent acknowledged to be a "retainer" into an attorney trust account. In fact, Respondent does not maintain such an account. Without Merchant's "informed consent, confirmed in wiring [sic], to a different arrangement," Respondent was required to "deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Rule 1.15(c). Respondent's failure to hold Merchant's $2,000.00 retainer separate from Respondent's own property, in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, violated Rule 1.15(a). The Court is not persuaded by Respondent's contention that the retainer already had been earned upon receipt. The time Respondent spent with the client prior to receipt of the retainer was part of the non-billable, free, initial consultation. Accordingly, this Court concludes Respondent violated Rule 1.15(a) and (c). See *Attorney Grievance Commission v. Ugwuonye*, 405 Md. 351, 370–71 [952 A.2d 226] (2008) and cases cited therein.

The court next turns to the issue of Respondent's "nonrefundable" $5000.00 engagement fee. Respondent points out that her contract clearly spells out that the engagement fee is to be "earned upon receipt" and "does not require that any additional legal services be rendered." Respondent also points out that her Engagement Fee Agreement clearly sets forth that a portion of the engagement fee is non refundable. Respondent asserts that because the contract was clear and unambiguous, the $5,000.00 fee did not have to placed in an attorney client trust fund since the payment was non-refundable and therefore did not belong to the client. This court rejects Respondent's contention.

In October 1, 1992, a Maryland State Bar Association Ethics Opinion 92–41 interpreted Rule 1.15(a) to require that retainers consisting of advance fees be placed in the attorney's escrow account until earned. In that same Maryland State Bar Association Ethics Opinion, the Committee

on Ethics also opined that only a true "engagement" fee, i.e. defined as a "retainer paid in order that the attorney is deprived from the right of rendering services for the other party," if it is reasonable under the dictates of Rule 1.5(a), may be placed in the firm's general account. Maryland State Bar Association Ethics Opinion 92–41. In a Maryland Bar Journal Article, author, Melvin Hirshman wrote concerning engagement fees that "[i]n Maryland, we have been advised that in certain counties one spouse will attempt to prevent his/her mate from obtaining representation by arranging initial conferences and thereafter discharging skilled family practitioners. For this reason, those specialists demand what appear to be high—if not exhorbitant [sic]—initial consultation fees." M. Hisrshman [sic], Aspects of Attorneys' Fees: Engagement Fee, Non–Refundable Retainer, Limitations on the Ability of Counsel to set a Fee, MARYLAND BAR JOURNAL, Apr. 17, 1984, at 13. See also, *Attorney Grievance Commission of Maryland v. Barbara Osborn Kreamer,* 404 Md. 282 [946 A.2d 500] (2008) defining an engagement fee in footnote 16

> as . . . the same as a general retainer or an "availability fee." *See In re Gray's Run Technologies, Inc.,* 217 B.R. 48, 53 (Bankr.M.D.Pa.1997); *In re Printing Dimensions, Inc.,* 153 B.R. 715, 719 (Bankr.D.Md.1993). In *In re Gray's Run Technologies, Inc.,* the court described this type of named retainer "as a sum of money paid by a client to secure an attorney's availability over a given period of time." 217 B.R. at 53 (quotation and citation omitted). The court continued: "This type of retainer binds a lawyer to represent a particular client while foreclosing that attorney from appearing on behalf of an adverse party. [This] fee is generally considered 'earned upon receipt' or 'non-refundable.' " *Id.* (citations omitted).

404 Md. at 296 [946 A.2d 500].

Therefore, it is clear that it is the purpose of the "retainer" that determines the type of account it must be placed in.

In the instant case, Respondent was not engaged to prohibit her from appearing on behalf of an adverse party. In the instant case, the adverse party initially was to be Prince George's County, Maryland in the discrimination complaint and/or wrongful termination suit. Therefore, the fees were not earned upon receipt. This portion of the fee, representing an advance payment of fees, which had not been earned as of the date of deposit, also had to be placed in an attorney client trust fund account. Therefore, this Court finds there was a clear violation of Rule 1.15(a) and (c) with respect to the entire amount of the funds advanced by Merchant.

*MLRPC 1.5*

The Court of Appeals of Maryland has recognized that fees charged for which little or no work is performed are unreasonable fees under Rule 1.5(a). *Attorney Grievance Commission v. Lawson,* 401 Md. 536, 580 [933 A.2d 842] (2007); *Attorney Grievance Commission v. McLaughlin,* 372 Md. 467, 501 [813 A.2d 1145] (2002); *Attorney Grievance Commission v. Monfried,* 368 Md. 373, 393 [794 A.2d 92] (2002). In the instant case, from the period of June 4 through June 13, 2008, Respondent did perform some investigation into Merchant's husband's background in preparation for preparing the Complaint for Annulment; drafted an incomplete Complaint for an Annulment; wrote two letters on Merchant's behalf and provided Merchant with a blank EEOC [sic] for her to complete and mail in.

Respondent, however, did not file any pleadings with any Court on behalf of Merchant; did not attend any Court proceedings or hearings as the representative of Merchant, or obtain any results for Merchant. She did not complete the contemplated representation or even approach completion thereof. This court is persuaded by clear and convincing evidence that Respondent performed little work to justify the initial $7000.00 fee, much less the subsequently billed $11,257.50. This court concludes that Respondent violated Rule 1.5(a).

In addition, this Court finds that Respondent violated Rule 1.5(b). At no time during the initial free consultation on June 4, 2008, did Merchant provided Respondent [sic] with the basis or rate of the fee. Moreover, Respondent did not communicate to the client that there was any time limit on the free initial consultation. Respondent failed to advise Merchant initially, during their first meeting, that the $5000 "engagement fee" meant that it was earned by Respondent on receipt, for no work performed, and that is [sic] would be non-refundable. Respondent did not provided Merchant with a written retainer agreement during their initial meeting or even on the following day. For these reasons, the court is satisfied that there has been a violation of Rule 1.5(b).

Judge Jaklitsch made the following additional conclusions of law regarding Merchant's complaint:

*MLRPC 1.4(b)*

During and after her initial consultation with Merchant on June 4, 2008, at which time an oral agreement was reached for Respondent to provide legal representation, Respondent failed to explain, to the extent reasonable necessary to permit the client to make informed decisions, that she did not intend to appear as counsel of record in the divorce/annulment proceeding. This Court concludes that Respondent violated Rule 1.4(b).

*MLRPC 1.16(d)*

As this Court has concluded that Respondent's fee was unreasonable, it follows that Respondent violated Rule 1.16(d) when upon termination of the representation, she failed to refund any advance payment that had not been earned. *Attorney Grievance Commission v. Ugwuonye*, 405 Md. 351, 370–71 [952 A.2d 226] (2008).

*MLRPC 7.5(b)*

Respondent's use of law office letterhead showing a Washington D.C. post office box address, without indicating thereon that she was only licensed to practice law in Maryland and not in the District of Columbia, violated Rule 7.5(b).

*MLRPC 8.1(b)*

The court concludes that Respondent, having provided the post office box in Washington D.C. as her only valid mailing address, is presumed to have received mail sent to that address. Therefore, this Court finds that Respondent violated Rule 8.1(b), when she knowingly failed to respond to the lawful demand for information requested in the Assistant Bar Counsel's January 21, 2009 letter.

*MLRPC 8.4(c)*

This Court is persuaded by clear and convincing evidence that Respondent violated Rule 8.4(c). Respondent retained unearned fees. *McLaughlin, supra,* 372 Md. at 502–03 [813 A.2d 1145]. In addition, Respondent engaged in further conduct involving "dishonesty, fraud, deceit or misrepresentation", when she falsified her billing statement to include: double billing on June 9 for document preparation; billing 7.5 hours on June 9 for a lunch meeting with the client at a restaurant which lasted only 2 to 3 hours; and billing for 1.5 hours for preparing an EEOC document which the client filled out and completed herself. Respondent's claim that she had rendered 39.5 hours of billable services within essentially a six day period (June 4, 5, 6, 7, 9 and 13) and that client had an incurred [sic] fees totaling $13,257.50 to which only the $2000.00 retainer had been applied, leaving a balance in excess of $11,000.00 is intentionally dishonest and fraudulent.

The hearing judge found several aggravating factors:

This court also has reviewed the aggravating factors found in 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions (1991) quoted in *Attorney*

*Grievance v. Lawson,* 401 Md. [at] 582–83 [933 A.2d 842], which include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

The court finds factors (d), (e), (g), and (j) to be present in this case. In particular, the court has taken note of Respondent's refusal to answer questions about the location of her purported Maryland law offices during the deposition taken by Bar Counsel. As in the *Lawson* case, this court has grave concerns about Respondent's lack of remorse and her failure to recognize any impropriety in her fee arrangement and handling of client funds paid in advance. Respondent has not returned unearned fees to her client and has not demonstrated contrition.

*McIntosh Complaint*

Judge Jaklitsch found by clear and convincing evidence that Respondent's conduct in the McIntosh complaint amounted to violations of MLRPC 1.5, 1.15, 1.16, 7.5, and 8.4. With regard to MLRPC 1.5, Judge Jaklitsch stated:

Pursuant to Rule 1.5, a lawyer shall not make an agreement for, charge, or collect an unreasonable fee. Respondent made an agreement for a $10,000.00 "nonrefundable engagement fee" to represent McIntosh. In the introductory paragraph of her Engagement Fee Agreement, Respon-

dent declared the engagement fee to be "earned upon receipt" and "does not require that any additional legal services be rendered."

Calling a fee "nonrefundable" will not make it so. *See* M. Hirshman, Aspects of Attorneys' Fees: Engagement Fee, Non–Refundable Retainer, Limitations on the Ability of Counsel to Set a Fee, MARYLAND BAR JOURNAL, Apr. 17, 1984 at 17. The fee Respondent sought to charge without having to perform any legal services in return for such payment, in this instance, is unreasonable. The fee sought to be charged was not in fact a true "engagement fee", which would allow it to be earned upon receipt. *See Maryland v. Barbara Osborn Kreamer,* 404 Md. 282 [946 A.2d 500] (2008) defining an engagement fee in footnote 16 as ... the same as a general retainer or an "availability fee". *See In re Gray's Run Technologies, Inc.,* 217 B.R. 48, 53 (Bankr.M.D.Pa.1997); *In re Printing Dimensions, Inc.,* 153 B.R. 715, 719 (Bankr.D.Md.1993). In *In re Gray's Run Technologies, Inc.,* the court described this type of named retainer "as a sum of money paid by a client to secure an attorney's availability over a given period of time." 217 B.R. at 53 (quotation and citation omitted). The court continued: "This type of retainer binds a lawyer to represent a particular client *while foreclosing that attorney from appearing on behalf of an adverse party. [This] fee is generally considered 'earned upon receipt' or 'non-refundable.'* " *Id. (citations omitted).*

404 Md. at 296 [946 A.2d 500]. (Emphasis added.)

Similarly, although Respondent had McIntosh certify and agree in the Engagement Fee Agreement and the Retainer Agreement that the fees were in fact reasonable, does not in fact make it so. Respondent attempted to charge a $10,000.00 non-refundable engagement fee and an additional $10,000.00 retainer fee to investigate and ultimately defend McIntosh against a federal indictment, when Respondent lacked even the basic prerequisite of admission to the U.S. District Court for the District of Maryland. Further, there

was no evidence that Respondent had the requisite skill to represent McIntosh against a complex federal indictment. Rule 1.5(a)(1). Respondent, when she initially approached McIntosh, was operating as an "Independent Association, *Small Business & Group Specialist*" for Pre-paid Legal Services, Inc. (emphasis added). Rule 1.5(a)(7).

Although Respondent argued that she could have been admitted to the U.S. District Court by Motion or by *pro hac vice*, this does not convert the engagement fee and retainer into something reasonable. Under the Retainer Agreement, if Respondent needed to engage the services of co-counsel, she would have "negotiated the billing rates and bill[ed] the Client for the actual amount due to the third parties." *See* Retainer Agreement, paragraph C.

The $5,000.00 fee that Respondent ultimately collected and retained from McIntosh was unreasonable for the amount of work performed. The Court of Appeals of Maryland has recognized that fees charged for which little or no work is performed are unreasonable fees under Rule 1.5(a). *Attorney Grievance Commission v. Lawson,* 401 Md. 536, 580 [933 A.2d 842] (2007); *Attorney Grievance Commission v. McLaughlin,* 372 Md. 467, 501 [813 A.2d 1145] (2002); *Attorney Grievance Commission v. Monfried,* 368 Md. 373, 393 [794 A.2d 92] (2002). The representation lasted less than 48 hours, during which Respondent met with the client twice (primarily to discuss Respondent's fees and the urgency of payment) and made only a few phone calls to law enforcement officials. Clearly, she did not complete the contemplated representation, or even approach completion thereof. Respondent did provide McIntosh a glimmer of Manley's opinion of the Government's case against her. However, Respondent did not review the evidence collected by law enforcement agencies against McIntosh, file a single document on behalf of McIntosh, did not enter her appearance as counsel or go to court with her, and did not obtain any resolution of the criminal charges ultimately filed against McIntosh. In short, Respondent did not earn $5,000.00. By retaining the full amount, notwithstanding

her self-serving designations of the fee as "nonrefundable" and "reasonable", Respondent charged and collected an unreasonable fee, in violation of Rule 1.5(a).

### MLRPC 1.15

Unless the client gives informed consent, confirmed in writing, to a different arrangement," an attorney must deposit advance fee payments not yet earned into an attorney trust account maintained pursuant to Tile 16, Chapter 600 of the Maryland Rules. *Lawson, supra,* 401 Md. at 578–79, 933 A.2d at 867. McIntosh did not give informed consent, confirmed in writing, exempting Respondent from the safekeeping requirements of Rule 1.15. By failing to deposit McIntosh's fee payment into a trust account before performing any work, Respondent violated Rule 1.15(a) and (c).

Even if an engagement fee under certain circumstances might be exempt from the safekeeping requirements of Rule 1.15, this is not true in the instant case. The fee charged in this case is not a true "engagement fee." In addition, Respondent's own Engagement Fee Agreement supports the conclusions in this case that the $5,000.00 payment received from McIntosh remained client funds to be held in trust. Respondent inserted a provision into the Engagement Fee Agreement, at paragraph H, that the Agreement would not take effect until "clearance of the Engagement fee deposit of *$6,000.00* " (emphasis added). Because McIntosh only gave Respondent a partial deposit of $5,000.00, the Agreement was not yet effective, and Respondent was obligated under Rule 1.15(a) to hold McIntosh's client funds separate from Respondent's own property.

Having previously concluded that Respondent did not earn the full $5,000.00 she received from McIntosh, this court concludes that Respondent violated Rule 1.15(d) by not delivering promptly to the client funds that the client was entitled to receive. Respondent also violated Rule 1.15(d) by failing to "render promptly a full accounting

regarding such property," i.e., the itemized statement of services requested by McIntosh.

*MLRPC 1.16(d)*

As this court as concluded that Respondent's fee was unreasonable, it follows that Respondent violated Rule 1.16(d) when upon termination of the representation, she failed to refund, despite McIntosh's request, the unearned portion of the $5,000.00 fee.

*MLRPC 7.5(b)*

Respondent's use of law office letterhead in a letter sent to Bar Counsel showing only a Washington, D.C. post office box address, without indicating thereon that she was only licensed to practice law in Maryland and not in the District of Columbia, violated Rule 7.5(b).

*MLRPC 8.4(a)*

Finally, based upon the preceding determinations that Respondent violated the Maryland Lawyers' Rules of Professional Conduct, it is axiomatic that she engaged in professional misconduct in violation of Rule 8.4(a).

In addition to the above conclusions of law, Judge Jaklitsch also found several aggravating factors present as a result of Respondent's conduct in the McIntosh complaint:

This court finds factors (d), (g) and (j) to be present in this case. This Court has grave concerns about Respondent's lack of remorse and her failure to recognize any impropriety in her fee arrangement and handling of client funds paid in advance. Respondent has not made any restitution and has refused to account for the time and work performed on behalf of McIntosh. Respondent has not demonstrated contrition.

## STANDARD OF REVIEW AS TO FACTUAL FINDINGS

We have stated in numerous cases that, "in reviewing the record we generally will accept the hearing judge's

findings of fact, unless those findings are clearly erroneous." *Att'y Griev. Comm'n v. Tanko,* 408 Md. 404, 418, 969 A.2d 1010, 1019 (2009); *Att'y Griev. Comm'n v. Uguuonye,* 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008). We defer to the hearing judge's assessment of the credibility of witnesses. *Att'y Griev. Comm'n v. Zdravkovich,* 375 Md. 110, 126, 825 A.2d 418, 427 (2003). In the "assessment of the credibility of witnesses, the hearing judge is entitled to accept—or reject—all, part, or none of the testimony of any witness, including testimony that was not contradicted by any other witness." *Att'y Griev. Comm'n v. Walter,* 407 Md. 670, 678–79, 967 A.2d 783, 788 (2009).

## EXCEPTIONS TO THE FINDINGS OF FACT

### *Merchant Complaint*

■ Petitioner did not file any written exceptions to the hearing judge's findings of fact or conclusions of law. Respondent filed numerous written exceptions to the judge's findings of fact.

It would serve no meaningful purpose for us to state verbatim and then to address in detail the multitude of Respondent's objections to the hearing judge's factual findings. Respondent's objections, to the factual findings, basically, either ignore or overlook our standard of review as stated above or are otherwise without merit. In this case, Respondent has raised 52 exceptions to the hearing judge's factual findings. For example, her first exception challenges the propriety of the service of process to initiate these disciplinary proceedings. Respondent contends that service of process was invasive and infringed on her privacy and safety because Petitioner abused its access to Judiciary personnel to obtain her confidential address from the Client Protection Fund. According to Respondent, Petitioner hired an investigator to obtain Respondent's address and the investigator accessed Respondent's motor vehicle records.

The Record shows that Petitioner attempted for many months to serve Respondent in person or by certified mail.

After several unsuccessful attempts, the hearing judge granted Petitioner's Motion on January 22, 2010, to "Permit Service Upon Employee Designated by Client Protection Fund." On January 29, 2010, Janet Moss, serving as an agent for Respondent, was personally served the above mentioned court documents. Respondent's exception is therefore overruled because it was not clearly erroneous for the hearing judge to find that Petitioner's efforts at personal service were reasonable and that alternative service was necessary.

Further, Respondent excepts to the finding that she did not maintain a trust account. Respondent ignores the fact that the record clearly shows that she did not maintain such an account. She excepts: to the finding that Merchant discussed with Respondent over the telephone Merchant's financial situation; to the finding that Respondent agreed to provide Merchant a free initial consultation; to the finding that Respondent did not communicate to Merchant the basis of the $7000.00 fee that Merchant paid by check on June 4, 2008; to the hearing judge's failure to state the reasons for Respondent's failure to provide a written fee agreement at the time of the June 4, 2008, meeting with Merchant; to the hearing judge's interpretation of language written in the memo field on Merchant's check in the amount of $7,000.00 paid to Respondent; to the finding that Respondent agreed to represent Merchant in her divorce/annulment proceedings; to the finding that Respondent was late for her meeting on June 5, 2008, with Merchant at the Circuit Court for Prince George's County and that Respondent's tardiness prevented her from filing a timely temporary restraining order against Merchant's husband; to the finding that Respondent and Merchant discussed both legal and no-legal matters during their meeting at Ledo's Pizza in Upper Marlboro.

In addition, Respondent excepts: to the finding that no written fee agreement was provided to Merchant on June 5, 2008, and the failure to find that it was the result of a lack of an available electrical outlet at Ledo's Pizza which would have accommodated Respondent's use of a printer; to the finding that as of June 5, 2008, Respondent had not communicated the

basis or rate of her fee to Merchant; to the accuracy of the hearing judge's finding that one phone conversation and several e-mail exchanges took place between Respondent and Merchant on June 6, 2008; to the failure of the hearing judge to acknowledge why the conversation between Merchant and Respondent on June 7, 2008, might have been "terse"; to the failure of the hearing judge to find that twelve phone calls were made from Merchant to Respondent on June 10, 2008, one phone call was made on June 11, 2008, and seven phone calls were made on June 12; to the finding as to the scheduling of the June 9, 2008, meeting with Merchant at Legal Seafood in Bethesda.

Moreover, Respondent excepts: to the finding as to the actual date when the intake form and EEOC complaint form were provided to Merchant; to the finding that Merchant did not know until June 9, 2008, that Respondent would not represent Merchant with regard to the annulment action; to the finding that the meeting on June 9, 2008, lasted only two to three hours; the finding that Merchant requested that Respondent refund the $5,000.00 engagement fee; to the fact that the hearing judge failed to find that Respondent sent Merchant a termination letter dated June 13, 2008 on June 16, 2008; to the absence of the hearing judge finding that Merchant lacked credibility in her testimony; to the finding that Respondent double-billed the client for preparing the "Pro-se Annulment Complaint," and that Respondent billed the client 1.5 hours for completing the EEOC form when it was Merchant who actually completed the form; to the hearing judge's failure to quote in her findings the content of Respondent's entire letter dated January 16, 2009, that was addressed to Bar Counsel or that Respondent would not accept Bar Counsel's proposal to settle the entire case under the terms of a conditional diversion agreement'; to the hearing judge's failure to find that Respondent did not receive Bar Counsel's letter dated January 21, 2009, requesting information from Respondent; to the hearing judge's failure to acknowledge Respondent's reasons for refusing to answer questions during her deposition regarding the location of law offices she claimed

to maintain in Maryland; to the finding that the complaint for Annulment drafted by the new attorney for Merchant used a "majority of the averments" from the complaint that Respondent had drafted; to the finding that Raleigh Bynum, Esq. was admitted *pro hac vice* in the annulment case; to the finding that Merchant was granted a Judgment of Annulment by the Circuit Court; and to the finding that Merchant was a *pro se* plaintiff in a case pending in a Virginia court.

## McIntosh Complaint

Similar to the Merchant complaint, Respondent challenges the hearing judge's factual findings with regard to the evidence supporting the complaint of Kara McIntosh. Respondent filed 20 exceptions to Judge Jaklitsch's findings of fact. She excepts: to the hearing judge's finding that Respondent gave McIntosh a business card; to the hearing judge's finding that McIntosh was involved in several business ventures, but did not find that the business ventures were criminal enterprises and schemes; to the finding that Respondent and McIntosh spoke by phone to discuss McIntosh's business venture on October 1, 2008; to the finding that McIntosh chose not to employ Respondent because she did not have the funds for the two requested advance fee payments; to the finding that Federal law enforcement authorities had taken over the investigation of McIntosh; to the hearing judge's finding that there was a phone call between McIntosh and Respondent on November 11, 2008; to the hearing judge's characterization of the original fee agreement faxed to McIntosh in October 2008 as being "all inclusive"; to the finding that DKR Investments, Inc. was a company formed to pursue McIntosh's business ventures; and, to the hearing judge's failure to find that the company was no more than a shell.

Further, she excepts to the hearing judge's finding that when McIntosh issued the $6,000.00 check for the deposit on the engagement fee, she requested that Respondent wait to cash the check so that additional funds could be deposited in the checking account and to the hearing judge's failure to find that Respondent's version of what happened was more plausi-

ble; to the finding that Respondent picked up McIntosh's business partner and took her to obtain the cashier's check to pay the engagement fee (Exception No. 10, the identity of which will become relevant shortly); to the finding that McIntosh's business partner brought checks with her to the November 12, 2008 meeting and requested that Respondent accept one as payment for the engagement deposit; to the finding that after receiving the $5,000.00 cashier's check from McIntosh, Respondent requested that McIntosh pay her the outstanding $1,000.00 for the engagement fee deposit; to the hearing judge's finding that she made phone calls on behalf of McIntosh on November 13, 2008; to the finding that Assistant United States Attorney Manley and McIntosh discussed the possibility of a cooperation plea agreement; to the finding that on November 13, 2008, Respondent requested an additional payment of $5,000.00 by 9:00 a.m. the next day in order to continue her representation of McIntosh; to the finding that McIntosh was unable to come up with the additional $5,000.00 fee by 9:00 a.m. on November 14, 2008; to the finding that McIntosh sent a reply e-mail to Respondent on November 14, 2008 at 2:14 p.m. and to the finding that the e-mail exchanges were "increasingly contentious"; to the finding that McIntosh felt pressured to attend a meeting with the F.B.I. without counsel present because Respondent had previously scheduled the meeting prior to withdrawal as McIntosh's attorney; to the finding that on November 25, 2008, McIntosh sent an e-mail inquiring about the refund of her earlier payment to Respondent.

With the exception of one of Respondent's challenges to the factual findings in the McIntosh complaint, all other exceptions to the factual findings are overruled. Based upon our independent review of the record, the factual findings of the hearing judge were not clearly erroneous as there was sufficient evidence in the record to support her factual conclusions. The hearing judge choosing to believe the testimony of Merchant and McIntosh, as opposed to the testimony of Respondent, is neither unusual nor improper. As to Respondent's exception No. 10, however, that exception is sustained. The

record shows that McIntosh actually testified that she picked up her business partner prior to the meeting with Respondent where the $5,000.00 cashier's check was presented. Respondent was correct in pointing out that the testimony at the disciplinary hearing did not support a finding that Respondent picked up McIntosh's business partner. This "victory" has no bearing on the outcome of this matter.

## STANDARD OF REVIEW AS TO LEGAL CONCLUSIONS

■ Our standard of review with regard to the legal conclusions of the hearing judge are well established. "We review the hearing judge's conclusions of law [without deference]." *Atty. Griev. Comm'n v. Stern,* 419 Md. 525, 556–57, 19 A.3d 904, 925 (2011) (internal citation omitted); Rule 16–759(b)(1) ("The Court of Appeals shall review *de novo* the circuit court judge's conclusions of law.").

## EXCEPTIONS TO THE CONCLUSIONS OF LAW

### *Merchant Complaint*

The hearing judge found that Respondent violated the Maryland Lawyers' Rules of Professional Conduct 1.4(b); 1.5(a) and (b); 1.15(a) and (c); 1.16(d); 7.5(b); 8.1(b); and 8.4(c). Respondent has taken exception to each of the hearing judge's conclusions of law. Respondent's written exceptions to the conclusions of law, and our responses, are set forth below.

### *MLRPC 1.4(b)*

■ The hearing judge found that Respondent violated MLRPC 1.4(b) because at the time that Merchant issued the check for $7,000.00, Respondent "failed to explain, to the extent reasonably necessary to permit the client to make informed decisions, that she did not intend to appear as counsel of record in the divorce/annulment proceeding." Respondent contends that she was "very clear" to Merchant that she did not intend to enter her appearance for the annulment

proceedings. Respondent posits that the terms and scope of the attorney-client relationship were explained reasonably to Merchant.

Merchant testified that she thought Respondent was going to represent her during the annulment proceedings. Respondent also performed work on an Annulment Complaint for Merchant, billing at least 3.0 hours for work on the annulment matter. The written Engagement Fee Agreement presented to Merchant five days after she issued Respondent the check for $7,000.00, does not specifically mention the annulment matter. The agreement does indicate, however, that additional matters could be assigned to the attorney by the client.[11] Merchant's testimony at the hearing, Respondent's statements, and the facts all show that there was confusion surrounding the scope of the agreement. It was Respondent's responsibility under the Rules of Professional Conduct to explain these matters to the client to the extent of reasonable necessity. One effective way to do so is in writing. That Respondent did not do. We therefore overrule Respondent's exception, and agree that Respondent violated MLRPC 1.4(b).

### MLRPC 1.5(a)

The hearing judge was persuaded by clear and convincing evidence that Respondent violated MLRPC 1.5(a) when she did little work to justify the initial $7,000.00 fee and the billed charges of $11,257.50. The hearing judge found that Respondent did not file any pleadings, did not attend any hearings, and did not obtain any results for Merchant. The work actually completed by Respondent consisted of: "some investigation into Merchant's husband's background in preparation for preparing the Complaint for Annulment; draft[ing] an incomplete Complaint for Annulment; wr[iting] two letters on Merchant's behalf and provid[ing] Merchant with a blank EEOC [form] for her to complete and mail in."

---

11. The Engagement Fee Agreement stated: "In the event that additional matters are assigned by Client to Attorney, Attorney's hourly rate of $335 will be charged to Client."

Respondent takes exception to the hearing judge's conclusion. According to Respondent, her fees were reasonably based on the eight factors listed in MLRPC 1.5(a). Respondent further contends that MLRPC 1.5(a) does not prohibit engagement fees. In *Att'y Griev. Comm'n v. Kreamer*, we defined engagement fees. We said they are

> the same as a general retainer or an "availability fee." *See In re Gray's Run Technologies, Inc.*, 217 B.R. 48, 53 (Bankr.M.D.Pa.1997); *In re Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr.D.Md.1993). In *In re Gray's Run Technologies, Inc.*, the court described this type of named retainer "as a sum of money paid by a client to secure an attorney's availability over a given period of time." 217 B.R. at 53 (quotation and citation omitted). The court continued: This type of retainer binds a lawyer to represent a particular client while foreclosing that attorney from appearing on behalf of an adverse party. [This] fee is generally considered "earned upon receipt" or "non-refundable." *Id.* (citations omitted).

*Att'y Griev. Comm'n v. Kreamer*, 404 Md. 282, 296, 946 A.2d 500, 508 (2008). This explanation of an engagement fee is similar to the definitions used by other jurisdictions.

An engagement fee could be utilized by an attorney if she or he "performs a service or provides a benefit to the client in exchange for the fee." *In re Sather*, 3 P.3d 403, 411 (Colo. 2000) (en banc). The Court in *Sather* noted several benefits the attorney could provide for a client in exchange for the fee, including: agreeing to take the client's case, making the client's case a priority over other work, or by agreeing not to represent an opposing party. *In re Sather*, 3 P.3d at 410.

Restatement (Third) of the Law Governing Lawyers § 34 is analogous to our MLRPC 1.5(a) of the MLRPC. This section states, "A lawyer may not charge a fee larger than is reasonable in the circumstances or that is prohibited by law." Restatement (Third) of the Law Governing Lawyers § 34 (2000). In the comments to this Restatement section, the drafters noted that:

An engagement-retainer fee satisfies the requirements of this Section if it bears a reasonable relationship to the income the lawyer sacrifices or expense the lawyer incurs by accepting it, including such costs as turning away other clients (for reasons of time or due to conflicts of interest), hiring new associates so as to be able to take the client's matter, keeping up with the relevant field, and the like.

Restatement (Third) of the Law Governing Lawyers § 34 cmt. e (2000). The comment further states that "Engagement-retainer fees agreed to by clients not so experienced should be more closely scrutinized to ensure that they are no greater than is reasonable and that the engagement-retainer fee is not being used to evade the rules requiring a lawyer to return unearned fees." *Id.*

Other courts have noted that engagement fees may need to be refunded even if the attorney states that they are "earned upon receipt." The D.C. Court of Appeals stated that "Engagement retainers are earned when received, but it may become necessary to refund even a portion of a retainer if the lawyer withdraws or is discharged prematurely." *In re Mance,* 980 A.2d 1196, 1202 (D.C.2009); *See also Columbus Bar Ass'n v. Klos,* 81 Ohio St.3d 486, 692 N.E.2d 565, 567 (1998) ("The attorney should not receive a windfall if he or she withdraws or is discharged by the client.").

In cases similar to the present case both the Indiana Supreme Court and the Supreme Court of Kentucky determined that an attorney violated the respective states' comparable versions of MLRPC 1.5(a) when the attorney charged an initial fee, a "non-refundable retainer" of $10,000.00, and performed less than five hours of work for the client. *In re Earhart,* 957 N.E.2d 611, 612 (Ind.2011). The Indiana Court determined that at least a portion of the initial fee was unearned despite the attorney labeling it "non-refundable." *Id.* The same attorney was also licensed to practice in the state of Kentucky. Reviewing the same set of facts, the Supreme Court of Kentucky also determined that the attorney violated MLRPC 1.5(a) because he charged an unreasonable fee. *Kentucky Bar Ass'n v. Earhart,* 360 S.W.3d 241, 244

(Ky.2012). The Court explained that the fee might have been reasonable when the agreement was made, but because the client died after the attorney had only worked five hours on the case, the fee was "clearly unreasonable." *Id.* To reach this conclusion, the Court relied on Kentucky Bar Association Ethics Opinion E–380, which stated that a "client may be entitled to a return of some portion of the 'non-refundable' fee retainer upon the termination of the representation, depending upon all the circumstances; that is the 'reasonableness' of the fee." *Id.*

The Iowa Supreme Court has also reached a similar result in a case involving a nonrefundable advance fee. In the Iowa case, the client paid a $10,000.00 fee that was deemed earned upon execution of the contract and was based on the attorney's time, skill, experience, and reputation. *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Frerichs,* 671 N.W.2d 470, 473–474 (Iowa 2003). The attorney performed some work for the client, but the criminal charges against the client were eventually resolved by plea bargains. *Frerichs,* 671 N.W.2d at 474. The Iowa Court determined that this nonrefundable fee violated I.C.A. Rule 32.DR 2–106(A) which prohibits attorneys from "charging a clearly excessive fee." *Frerichs,* 671 N.W.2d at 475, 477. The benefits offered to the client in exchange for the nonrefundable fee were "nothing more than the ethical obligation imposed on all lawyers when they agree to provide legal services to a client. Brickman & Cunningham, 72 N.C. L.Rev. at 24. A lawyer who agrees to perform legal services also necessarily agrees to be available to perform those services." *Frerichs,* 671 N.W.2d at 477.

In our interpretation of MLRPC 1.5(a), we recently noted that "[t]he reasonableness of a fee is not measured solely by examining its value at the outset of the representation; indeed an otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it." *Atty. Griev. Comm'n v. Garrett,* 427 Md. 209, 46 A.3d 1169 (2012). In the case before us, the written fee agreement signed by Merchant five days after she paid Respondent the $5,000 engagement fee, states that the fee was paid "for the Attorney's: (1) willingness to provide

legal advice and services to the Client; (2) ensuring her availability to the Client; and (3) willingness and availability to represent the Client, for reasonable fees, in transactions and litigation." We conclude that the benefit provided to Merchant in exchange for her payment of a nonrefundable $5,000.00 fee, "was nothing more than the ethical obligation imposed on all lawyers when they agree to provide legal services to a client." *Frerichs*, 671 N.W.2d at 477. The fee agreement did not state: that it precluded Respondent from representation of another party, that it was paid in consideration of Respondent's expertise and skill in this area of employment law, that it was paid as a basis for Respondent prioritizing Merchant's case over other work, that it was paid because Respondent would need to hire additional help to take on the case, that it was paid so that Respondent could keep up with the employment law field, or that it was paid in consideration of Respondent having to turn away other work that she otherwise could have accepted. The only purported detriment to Respondent or benefit to Merchant was the "ensuring of her availability to the Client" and the "willingness to provide legal advice and services." Respondent was therefore providing no "benefit to the client in exchange for the fee." *Sather*, 3 P.3d at 411. Thus, we agree with the hearing judge in the case *sub judice* that the fee paid was neither an engagement fee by definition nor a reasonable fee under the circumstances.

Respondent excepts to the hearing judge's finding that she produced no usable work for Merchant and, therefore, the fee was unreasonable. Respondent contends that Merchant used every document produced for her and plagiarized the Complaint for Annulment that she produced. This exception is overruled. "Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder." *State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323, 331 (1998). Merchant testified that the information provided to her by Respondent "was not accurate or appropriate enough for [her] to file the Complaint for divorce or annulment." The hearing judge found that the only work completed by Respondent consisted of some investigation for the Annulment Com-

plaint, an incomplete Complaint for Annulment, the drafting of two letters, and providing Complainant with a blank EEOC form. The hearing judge determined by clear and convincing evidence that "Respondent performed little work to justify the initial $7,000.00 fee, much less the subsequently billed $11,257.50." Accordingly, we overrule all of Respondent's exceptions pertaining to MLRPC 1.5(a). Moreover, Respondent violated MLRPC 1.5(a) when she provided Merchant with no additional benefit in exchange for the $5,000.00 engagement fee and when she performed little work on the case and refused to provide a refund.

### *MLRPC 1.5(b)*

The hearing judge concluded that Respondent violated MLRPC 1.5(b) because the basis of her fees was not communicated to the client. Respondent and Merchant met in person on June 4 and June 5, 2008. At the conclusion of the June 4 meeting, Merchant issued a $7,000.00 check to Respondent. The two also had phone conversations on June 6 and June 7, 2008. The written fee agreement, however, was not presented to Merchant until June 9, 2008. Prior to the production of the written fee agreement, Respondent had billed Merchant for over 20 hours of work at the rate of $335.00 an hour. Respondent takes exception to the conclusion that she violated MLRPC 1.5(b). She contends that she did not violate MLRPC 1.5(b) because she fulfilled the requirements laid out in the comment to the Rule when she provided the basis of the fee in writing to Merchant.

At the hearing, Merchant testified that no written fee agreement was provided to her at the June 4, 2008 or June 5, 2008 meetings. She further testified that she was not aware that the $7,000.00 she paid Respondent on June 4, 2008, was going towards two different fees. Because the hearing judge believed this testimony, and concluded that Respondent did not effectively communicate the basis of her fees to Merchant, we agree that Respondent violated MLRPC 1.5(b).

*MLRPC 1.15(a) and (c)*

The hearing judge concluded that Respondent violated MLRPC 1.15(a) and (c) because Respondent did not keep Merchant's $2,000.00 retainer in a separate attorney trust account. As discussed *supra*, the hearing judge also rejected Respondent's claim that the $5,000.00 "engagement fee" was earned upon receipt. The judge therefore concluded that MLRPC 1.15(a) was further violated when Respondent did not deposit the $5,000.00 in an attorney trust account. The hearing judge noted that a true "engagement fee" could be placed in a firm's general account, but the fee charged by Respondent was not earned upon receipt and was required to be safeguarded. Respondent takes exception to the hearing judge's conclusion that she violated MLRPC 1.15(a) because she believes the $5,000.00 "engagement fee" was nonrefundable and earned upon receipt and therefore did not have to be deposited in an attorney trust account.

As we discussed *supra*, the $5,000.00 fee charged by Respondent does not meet the definition of an "engagement fee." Accordingly, the fee was not earned upon receipt and Respondent was required to safeguard the funds in an attorney trust account. During her deposition, Respondent admitted that she did not deposit Merchant's funds in an attorney trust account and that she did not maintain such an account during the period of their relationship. We therefore agree that Respondent violated MLRPC 1.15(a).

The hearing judge also concluded that "Without Merchant's 'informed consent, confirmed in writing, to a different arrangement,' Respondent was required to 'deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.' [MLRPC] 1.15(c)." Respondent takes exception to the conclusion that she violated MLRPC 1.15(c) because she argues that the $5,000.00 was earned upon receipt and could be placed in a general account and that Merchant gave informed consent for the $2,000.00 retainer to be deposited in the general account when she paid

for both fees with the same check. We reject the contention that Merchant gave informed consent for Respondent to use an arrangement other than what MLRPC 1.15 requires.

Merchant did not give informed consent for Respondent to deposit the fees in an account other than an attorney trust account. Merchant testified that she was not aware that the $7,000.00 that she paid Respondent at the conclusion of the June 4, 2008, consultation was going towards two different fees. Because Respondent did not adequately explain the basis of her fees to Merchant, it does not seem likely that Merchant gave informed consent for Respondent to deposit the funds in a general account. Even if we were to accept that Merchant did in fact give informed consent, MLRPC 1.15(c) requires that the consent must be in writing. There is no indication from the Record that Merchant gave informed consent in writing. We also reject Respondent's contention that the $2,000.00 retainer was earned by the time that she deposited Merchant's check into her bank account. Although Respondent claims that she billed Merchant 10.0 hours at a total charge of $3,350.00 for the "Intake Meeting" on June 4, 2008, this meeting was portrayed originally to Merchant as a free consultation. Therefore, Respondent had not earned the $2,000.00 retainer by the time that she deposited Merchant's check. We therefore agree that Respondent violated both MLRPC 1.15(a) and 1.15(c) when she failed to deposit Merchant's fees in an attorney trust account without Merchant's informed, written consent to an alternative arrangement.

### MLRPC 1.16(d)

The hearing judge found that Respondent violated MLRPC 1.16(d) because she charged an unreasonable fee and did not return the unearned portion of this fee upon termination of her representation. The hearing judge reached this conclusion based on her finding that the fees charged by Respondent were unreasonable. Respondent takes exception to the conclusion that she violated MLRPC 1.16(d). She claims that she took steps to protect Merchant's interests upon termination. Respondent states that she gave verbal

and written notice of termination to Merchant and that she provided Merchant with an up-to-date bill showing the balance owed. Respondent further claims that MLRPC 1.16(d) was not violated because Merchant was not harmed by the termination of representation.

In her exceptions to the conclusions regarding MLRPC 1.16(d), Respondent does not respond to the claim that her fee was unreasonable. In *Atty. Griev. Comm'n v. Ugwuonye*, we noted that MLRPC 1.16(d) is violated when an attorney does not return unearned fees when representation is terminated. *Atty. Griev. Comm'n v. Ugwuonye*, 405 Md. 351, 372, 952 A.2d 226, 238 (2008). As portions of Respondent's fees were unearned, we overrule Respondent's exceptions to the conclusion that she violated MLRPC 1.16(d).

Respondent also takes exception to the conclusion that she violated MLRPC 1.16(d) on the basis that the rule should not apply if we conclude that it was Merchant who terminated the relationship first. Respondent does not offer any authority to support her claim that the rule does not apply if it is the client that terminates the representation. Respondent's contention that MLRPC 1.16(d) does not apply if it is the client who terminates the representation is incorrect. We have previously held that an attorney violates MLRPC 1.16(d) when she does not refund unearned fees upon termination. *See Atty. Griev. Comm'n of Maryland v. Patterson*, 421 Md. 708, 736, 28 A.3d 1196 (2011). Therefore, we overrule Respondent's exception to the hearing judge's conclusion that she violated MLRPC 1.16(d).

### MLRPC 7.5(b)

The hearing judge concluded that Respondent violated MLRPC 7.5(b) because she utilized letterhead with a Washington, D.C. address, but did not indicate that she was only licensed to practice law in Maryland. Respondent takes exception to this conclusion because she claims that her letterhead was not used to communicate any false or misleading information. A copy of Respondent's letterhead was admitted into evidence and shows that no jurisdictional limitation was

listed under her Washington, D.C. address. Respondent's letterhead appeared as follows:

LAW OFFICE
KATRICE STINSON
POB 56278
WASHINGTON, DC 20040

Respondent is only licensed to practice law in Maryland. We affirm the hearing judge's conclusion that Respondent violated MLRPC 7.5(b) because no jurisdictional limitation was included on her letterhead.

### *MLRPC 8.1(b)*

The hearing judge concluded that Respondent violated MLRPC 8.1(b) because she knowingly failed to respond to Petitioner's January 21, 2009 letter. An attorney violates MLRPC 8.1(b) when she "knowingly fail[s] to respond to a lawful demand for information from an admissions or disciplinary authority." The hearing judge reached this conclusion because the letter was sent to the only mailing address provided by Respondent. Respondent takes exception to this legal conclusion on the grounds that there is no evidence that this letter was actually received by her. On January 16, 2009, Respondent sent a letter to Petitioner in which she addressed some concerns about her fees and handling of an attorney trust account. The letterhead used by Respondent stated: "Mail To: POB 56278, Washington, DC 20040." On January 21, 2009, Petitioner responded that they received Respondent's letter and they asked her to send information about her Maryland law offices. A copy of this letter was admitted into evidence and shows that the letter was sent to the Respondent at the address she provided, "P.O. Box 56278, Washington, D.C. 20040." Respondent did not reply to this letter. Further, at her deposition, Respondent refused to answer questions regarding her Maryland offices. We accept the hearing judge's factual finding that Respondent received the letter and knowingly failed to respond to the lawful demand for information from Bar Counsel. We therefore conclude that Respondent's conduct violated the plain meaning of MLRPC 8.1(b) by

failing to provide information requested at her deposition and by failing to respond to Bar Counsel's letter.

### *MLRPC 8.4(c)*

An attorney violates MLRPC 8.4(c) when she "engage[s] in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The hearing judge concluded that Respondent violated MLRPC 8.4(c) for two reasons. First, the hearing judge found that section (c) was violated when Respondent retained unearned fees. Second, the hearing judge concluded that Section 8.4(c) was violated when Respondent submitted a falsified billing statement to Merchant. The hearing judge found that the billing statement was false because it included double charges for document preparation, contained a 7.5 hour charge for a two to three hour charge, and included a 1.5 hour charge for preparing a form that Merchant actually filled out herself.

Respondent excepts to the hearing judge's conclusion that she violated MLRPC 8.4(c) because she contends that all fees were earned and she is still owed money from Merchant for the legal services rendered. This exception is overruled. As we discussed *supra*, the alleged "engagement fee" was not earned upon receipt. Additionally, we accept the finding from the hearing judge that Respondent engaged in dishonest and fraudulent conduct when she billed 39.5 hours of services for a six-day period at a total charge of $13,257.50. We have previously said that "[t]he retention of unearned fees paid by a client, alone, may constitute a violation of [MLRPC] 8.4(c)." *Atty. Griev. Comm'n v. McLaughlin,* 372 Md. 467, 502–03, 813 A.2d 1145, 1166 (2002). Because Respondent retained both the unearned "engagement fee" and the unearned fees from the falsified billing summary, we agree that MLRPC 8.4(c) was violated.

### *McIntosh Complaint*

After hearing the evidence pertaining to the McIntosh complaint, the hearing judge found by clear and convincing

evidence that Respondent violated MLRPC 1.5(a); 1.15(a), (c), and (d); 1.16(d); 7.5(b); and 8.4(a). Respondent has taken exception to the hearing judge's conclusions for each rule violation. Our responses to her exceptions are set forth below.

*MLRPC 1.5(a)*

██ The hearing judge concluded that the $5,000.00 engagement fee Respondent retained was an unreasonable fee, in violation of MLRPC 1.5(a). The hearing judge found that this fee was not a true engagement fee and that it was unreasonable for the work actually performed.

Respondent takes exception to conclusion that she violated MLRPC 1.5(a) because she believes that the $5,000.00 fee was a permissible engagement fee and that she earned this fee. The "Engagement Fee Agreement" Respondent executed with McIntosh is similar to the agreement that she utilized with Merchant. Like the Merchant agreement, the McIntosh agreement states that the nonrefundable engagement fee is paid by the client for Respondent's willingness and availability to provide representation. Like the conclusion we reached with the Merchant complaint, we again agree with the hearing judge that the fee Respondent collected from McIntosh was not a true "engagement fee." The services Respondent offered in exchange for this fee were "nothing more than the ethical obligation imposed on all lawyers when they agree to provide legal services to a client." *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Frerichs,* 671 N.W.2d 470, 477 (Iowa 2003). The fee was not "earned upon receipt" and the work actually performed by Respondent does not justify a $5,000.00 fee. We have previously noted that a fee "may become excessive in cases where the attorney does little or no work." *Att'y Griev. Comm'n v. Lawson,* 401 Md. 536, 580, 933 A.2d 842, 868 (2007). Here the only work completed by Respondent was a few phone calls to law enforcement officials. We overrule Respondent's exceptions and conclude that Respondent collected an unreasonable fee in violation of MLRPC

1.5(a) when she retained the $5,000.00 fee after performing little work for McIntosh.

*MLRPC 1.15(a), (c), and (d)*

■ The hearing judge concluded that Respondent violated MLRPC 1.15(a) and (c) when she failed to deposit McIntosh's fee payment into an attorney trust account. Respondent takes exception because she asserts that the $5,000.00 "engagement fee" was her property upon receipt. As previously discussed, this fee was not an "engagement fee." Per MLRPC 1.15(a), Respondent was required to deposit this fee in an attorney trust account unless she received informed written consent from McIntosh for an alternative arrangement per MLRPC 1.15(c). There is nothing in the record to show that McIntosh agreed to any alternative arrangement. We therefore must conclude that Respondent violated MLRPC 1.15(a) and (c).

■ Furthermore, the hearing judge concluded that 1.15(d) was violated when Respondent failed to provide a full accounting of McIntosh's property. The record shows that on November 25, 2008, McIntosh requested an itemized accounting of Respondent's billable hours. Because no itemized accounting was provided to McIntosh, we conclude that Respondent violated MLRPC 1.15(d).

*MLRPC 1.16(d)*

■ The hearing judge found that MLRPC 1.16(d) was violated because Respondent's unreasonable fee was not refunded upon termination of the representation despite McIntosh's requests. Respondent takes exception because she argues that McIntosh breached the contract and is therefore not due any refund. As we discussed with the Merchant complaint, MLRPC 1.16(d) is violated when an attorney retains unearned fees upon termination. *Att'y Griev. Comm'n v. Uguruonye*, 405 Md. 351, 372, 952 A.2d 226, 238 (2008). We have already concluded that at least a portion of the fee was unearned by Respondent. We therefore overrule Respon-

dent's exceptions and concluded that MLRPC 1.16(d) was violated.

### MLRPC 7.5(b)

The hearing judge concluded that Respondent violated MLRPC 7.5(b) when she failed to include her jurisdictional limitation on letterhead that contained only a Washington, D.C. address. Respondent is not licensed to practice law in Washington, D.C. Respondent excepts because she claims that she "does not purport to have an 'office' in a jurisdiction other than Maryland." A copy of a letter Respondent sent to Bar Counsel on March 20, 2009, was admitted into evidence. The letterhead is identical to the one at issue in the Merchant complaint. It contains only a Washington, D.C. address and no jurisdictional limitation. We therefore overrule Respondent's exceptions and agree that MLRPC 7.5(b) was violated.

### MLRPC 8.4(a)

The hearing judge found that the preceding violations of the Maryland Lawyers' Rules of Professional Conduct resulted in a violation of MLRPC 8.4(a). Respondent takes exception on the grounds that her conduct did not reflect adversely on her "honesty, trustworthiness, or fitness as an attorney." We agree with the hearing judge that Respondent violated MLRPC 1.5, 1.15, 1.16, and 7.5 as a result of her conduct towards McIntosh. We therefore conclude that MLRPC 8.4(a) was also violated by Respondent and overrule her exceptions.

### SANCTIONS

When considering the appropriate sanction for violations of the Maryland Lawyers' Rules of Professional Conduct, "we have taken into account the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions (1991)". *Att'y Griev. Comm'n v. Mininsohn,* 380 Md. 536, 575, 846 A.2d 353, 376 (2004). These aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Id.* The hearing judge concluded that several of these aggravating factors were present in this case. In the Merchant matter, the hearing judge concluded that there was evidence in the record to support a finding that factors (d), (e), (g), and (j) were present. In the McIntosh matter, the hearing judge concluded that factors (d), (g), and (j) were present. First, we agree that factor (d), multiple offenses, is present here. We note that nine different rules were violated by Respondent as part of her representation of Merchant and seven different rules as a result of the McIntosh matter. Second, we also conclude that factor (e), bad faith obstruction of disciplinary proceeding, is present here based on Respondent's failure to respond to Bar Counsel's January 21, 2009, letter that requested the addresses of her Maryland offices and to answer related questions during Bar Counsel's deposition of her. Third, we are also convinced that factor (g), refusal to acknowledge wrongful nature of conduct, is present here. The hearing judge noted "grave concerns about Respondent's lack of remorse and her failure to recognize any impropriety in her fee arrangement and handing of client funds paid in advance." This finding is supported by the written exceptions filed by Respondent. In her exceptions to the findings in the Merchant matter, Respondent argues that "this is a contract law matter."

Nearly four pages of her Merchant exceptions and another page in her McIntosh exceptions are devoted to a contract law analysis of the fee agreements. Respondent also argues that all fees were earned and that she is still owed money from Merchant. These exceptions from the Respondent show that she has not acknowledged the wrongful and unethical nature of her conduct and that aggravating factor (g) is present. Finally, we agree with the hearing judge that aggravating factor (j), indifference to making restitution, is present here. Merchant testified that she did not receive any refund from the Respondent upon termination of the relationship. Respondent claims that she is still owed money from Merchant for the legal services that were rendered. Similarly, McIntosh repeatedly requested a refund of at least part of the fee payment. After Respondent refused this request, McIntosh filed a complaint with the Attorney Grievance Commission. We therefore conclude that Respondent has shown an indifference to making restitution in both matters. The hearing judge noted one mitigating factor in both the Merchant and McIntosh matters. In letters sent to the court and Petitioner after the complaints were filed, Respondent included a jurisdictional limitation on her letterhead.

Petitioner recommends that Respondent be disbarred. Petitioner asks that we consider two additional aggravating factors. First, Petitioner contends that aggravating factor (c), a pattern of misconduct, is present here. We agree with Petitioner. Respondent exhibited a pattern of misconduct when she repeated the same offense with her two clients, Merchant and McIntosh. We also agree with Petitioner that aggravating factor (b), dishonest or selfish motive, is present here. Respondent showed a dishonest and selfish motive when she retained unearned fees. This dishonest motive was also evident in the Merchant matter when she double billed for document preparation, billed 7.5 hours for a two to three hour lunch, and billed 1.5 hours for providing Merchant with a blank EEOC form.

"The primary purpose of attorney discipline is the protection of the public, not the punishment of the attorney." *Attorney Grievance Comm'n Of Maryland v. Whitehead,* 390 Md. 663, 674, 890 A.2d 751, 757 (2006). We have also noted that "[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Att'y Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Petitioner's "Supplemental Memorandum In Support of Recommendation for Sanction" states, in part, "The combination of the misconduct in which [Respondent] engaged and her total lack of appreciation that she did anything wrong warrants Respondent's disbarment."

In *Att'y Griev. Comm'n v. McLaughlin,* we found that the attorney had violated numerous rules after he "received and retained $72,000 for work that he knew he had not done." *Atty. Griev. Comm'n v. McLaughlin,* 372 Md. 467, 503, 813 A.2d 1145, 1166 (2002). We concluded that the attorney's excessive fee was a violation of, "MLRPC 1.4 (Communication), MLRPC 1.5 (Fees), MLRPC 1.7 (Conflict of Interest), MLRPC 1.8(a) (Conflict of Interest: Prohibited Transactions), MLRPC 1.15 (Safekeeping Property), MLRPC 1.16(d) (Declining or Terminating Representation), MLRPC 8.4(b), (c) & (d) (Misconduct)." *McLaughlin,* 372 Md. at 510, 813 A.2d at 1170. For violating these rules, we determined that the appropriate sanction for the attorney was disbarment. *McLaughlin,* 372 Md. at 511, 813 A.2d at 1171.

In *Att'y Griev. Comm'n v. Ward,* an attorney charged the client a $3,000.00 retainer but then "did little work to resolve his client's interests." 396 Md. 203, 212, 913 A.2d 41, 47 (2006). The Attorney was found to have violated MLRPC Rules 1.1; 1.3; 1.4(a) and (b); 1.5(a); and 8.4(a), (c) and (d). *Ward,* 396 Md. at 216, 913 A.2d at 49. We again determined in that case that disbarment was the appropriate sanction. *Ward,* 396 Md. at 218, 913 A.2d at 50.

Here, we have concluded that Respondent's actions amounted to numerous violations of the Maryland Lawyers' Rules of

Professional Conduct. In the Merchant complaint, the rules violated included: 1.4(b); 1.5(a) and (b); 1.15(a) and (c); 1.16(d); 7.5(b); 8.1(b) and 8.4(c). In the McIntosh complaint, the rules violated included: 1.5(a); 1.15(a), (c), and (d); 1.16(d); 7.5(b); and 8.4(a).

Additionally, we have considered the numerous aggravating factors when determining the appropriate sanction in this matter. In order to adequately protect the public, we conclude that the appropriate sanction for Respondent's misconduct is disbarment.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST KATRICE SELENA STINSON.**